In the Matter of Kenneth E. CLARK, Debtor.

CENTURY BANK OF PINELLAS COUNTY, a Florida Banking Corporation, Plaintiff,

v.

Kenneth E. CLARK, Defendant.

Bankruptcy No. 77–1047–T.

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Dec. 13, 1979.

Allan C. Watkins, Tampa, Fla., for plaintiff.

Larry M. Segall, Tampa, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION DETERMINING DISCHARGEABILITY

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration is the dischargeability, vel non, of a debt admittedly due and owing by Kenneth E. Clark, the above-named bankrupt to the Century Bank of Pinellas County, the plaintiff who instituted this adversary proceeding. The complaint was filed pursuant to Sec. 17c of the Bankruptcy Act and charges that by virtue of Sec. 17a(2) the obligation should be excepted from the protective provisions of the general bankruptcy discharge because it represents an extension of credit in reliance upon a materially false financial statement in writing, submitted by the bankrupt with intent to deceive the plaintiff.

The central facts of this controversy as they appear from the record and as presented at the final evidentiary hearing, can be briefly summarized as follows:

On June 13, 1977, the bankrupt submitted to the plaintiff a personal financial statement for the purpose of securing a loan from the plaintiff. This financial statement indicated that the bankrupt possessed assets in the amount of $1,833,320 and total liabilities in the amount of $82,767. Among the assets listed in the financial statement, was certain corporate stock of a corporation known as Pro-Teck Investment Corp. valued at $1,500,000. It is undisputed that the value of this stock at the time was actually nil and that the valuation stated in the financial statement was based upon an assumption that the bankrupt would receive a

venture capital loan for Pro-Teck from another lending institution. The president of the plaintiff bank, George Bell, testified that he had knowledge of the venture capital loan but that he telephoned the bankrupt on June 14, 1977, and that the bankrupt told him that the loan had been obtained. This conversation was summarized by Mr. Bell (B's Exh. # 1).

On June 13, 1977, Mr. Bell ran a credit check on the bankrupt which revealed six creditors and $3,361 in debts which were not listed on the financial statement. Mr. Bell testified that he did not discuss these omissions with the bankrupt as they represented current balances on routine department store charge accounts all of which were of a relatively small amount.

On or about June 14, 1977, Mr. Bell notified the bankrupt that the loan had been approved, and shortly thereafter the bankrupt submitted a credit application to complete the files. This credit application failed to reveal any of the previously omitted obligations. On June 14, 1977, the plaintiff loaned to the bankrupt the sum of $3,950.

On September 29, 1977, the bankrupt filed his petition in bankruptcy. The schedules submitted with the petition reveal assets in the amount of $757,742 and debts in the amount of $753,742.17 as opposed to the $1,833,320 in assets and the $82,767 in debts listed in the financial statement.

At the time of the final evidentiary hearing the bankrupt testified that of the $757,-742.17 in debts listed in the schedules, $449,-542.21 were in existence on the date that the loan was granted. Though the deposition of the bankrupt revealed that some of these debts may have been corporate debts on which the bankrupt was not individually liable and were merely listed in the schedules as a precautionary measure, this is not sufficient to explain the gross disparity between the $449,542.21 figure in the schedules and the $82,767 figure on the financial statement. It is therefore without dispute that in addition to the overstatement of the assets, there was a substantial number of debts in existence on June 13, 1977, which were not listed in the financial statement

and which were not revealed by the credit report.

The claim of nondischargeability of this debt is based on Sec. 17a(2) of the Bankruptcy Act which provides in pertinent part as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except . . . (2) . . . liabilities for obtaining money or property . . . on credit . . . in reliance upon a materially false statement in writing respecting his financial condition made . . . with intent to deceive . . . ."

The burden of establishing all essential elements of nondischargeability is on the plaintiff. Accordingly, in order to prove the nondischargeability of a debt under Sec. 17a(2), the plaintiff must establish (1) that the bankrupt made the representations; (2) that at time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations, and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.

It is without dispute that the bankrupt submitted a financial statement to the plaintiff which contained false representation as to existing assets and obligations. It is also without dispute that the bankrupt knew at the time that the financial statement did not contain a true representation of the bankrupt's then existing financial condition.

However, before the false representations in the financial statement may become actionable under this section, it must be shown that they were made with the requisite intent to deceive. The bankrupt contends that the financial statement was not submitted with the intent to deceive because it was prepared for another lender, not for the plaintiff, and because it was prospective only in that the financial statement was a projection based upon an assumption that the bankrupt would receive a venture capital loan for Pro-Teck Investment Corp. However, Mr. Bell, president

of the plaintiff bank, testified that he was not told that it was prepared for a different purpose and that he was not told that it was incomplete. Mr. Bell did testify that he had knowledge of the venture capital loan, but that the bankrupt told him that the loan had been obtained. But regardless of the prospective nature of the financial statement in relation to the assets, the bankrupt has offered no explanation for the omission of substantial liabilities from the financial statement and it cannot be seriously contended that the bankrupt had no knowledge of the $400,000 in existing debts which he listed in his schedules three months later nor has the bankrupt asserted that he had no knowledge of the debts at the time. While it is impossible to probe the inner processes of a borrower's mind in order to determine his intent, his actions speak louder than his words. *Beneficial Finance Co. of Louisiana v. Lathrop*, 207 So.2d 220 (La.App.1968). A person who knowingly makes a false representation to a lender is presumed to know the consequence of his conduct, accordingly, the intent to deceive is presumed. *Beneficial Finance Co. of Charleston v. Collins*, 150 W.Va. 655, 149 S.E.2d 221 (1966). Considering the element of fraudulent intent, which is also an indispensable element of recovery under this section, it should be pointed out that while fraud is never presumed and evidence showing the possibility of fraud or showing circumstances which might create a suspicion of fraud are not sufficient, *Friendly Finance Service Mid-City, Inc. v. Windham*, 240 So.2d 26 (La.App.1970), the fraud may be found to exist, even in the absence of direct proof, which of course, is rarely available. If the totality of the circumstances present a picture of deceptive conduct by the borrower, which indicates that the borrower intended to deceive and cheat the lender, the intended falsehood, coupled with this conduct, is sufficient to establish the requisite intent required under the Act. Applying these principles to the facts at hand, this Court is convinced that the Bankrupt did intend to deceive the plaintiff as to his credit worthiness.

Finally, the plaintiff must establish that the plaintiff relied on the false financial statement in extending credit to the bankrupt. It is abundantly clear that the falsity of the financial statement was material as the bankrupt overstated his assets by an amount in excess of $1,500,000 and omitted debts in excess of $400,000. No one can seriously contest that a correct statement of liabilities in a financial statement has an important and material bearing on the financial condition of the borrower. Thus, a failure to disclose substantial already outstanding obligations on a loan application renders the statement materially false, a proposition which needs no extensive citation of authorities. See *Abbott v. Regents of University of California*, 516 F.2d 830 (9th Cir. 1975). A correct statement of one's assets has an equally material bearing on the financial condition of the borrower and a substantial overstatement of one's assets likewise renders the statement materially false. However, the bankrupt contends that as the plaintiff knew, due to the credit report it obtained, that $3,361 in debts and six creditors were not listed on either the financial statement or the credit application, that the plaintiff could not rely upon the financial statement that it knew to be false at the time the loan was granted. However, a prudent and reasonable lender would not be alarmed by a credit check which revealed relatively small balances on routine department store charge accounts and would not be required to make further inquiry as a result of such discovery, as would be the case upon the discovery of substantial outstanding loans. Therefore, the plaintiff was completely justified in relying upon the financial statement notwithstanding its knowledge of the $3,361 in current balances which did not appear in the financial statement. Furthermore, it is well established that partial reliance by a lender on the false financial statement is sufficient to render a debt nondischargeable. *In re Sewell*, 361 F.Supp. 516 (D.C.Ga.1973). Mr. Bell testified that it was bank policy that all loans of this size required a personal financial statement, that he thoroughly reviewed all the information which the bankrupt provided and that if he had known of the true financial condition of the bankrupt, that he

would not have made the loan. Accordingly, this Court is satisfied that the plaintiff has established that the plaintiff relied upon the false financial statement in granting the loan to the bankrupt and that the plaintiff sustained a loss as the proximate result of the false representation having been made.

Considering the record, this Court is satisfied that the plaintiff has established with the requisite degree of proof that the liability represented by the loan to the bankrupt was created by the submission of a materially false financial statement by the bankrupt with intent to deceive and that the plaintiff relied on this statement in making the loan. Therefore, this debt should be excluded from the protective provision of the general bankruptcy discharge.

A separate Final Judgment will be entered in accordance with the foregoing.