172 N.J. Super. 539 (1980)
412 A.2d 1089
BETTE C. BURKE, PLAINTIFF,
v.
FIRST PEOPLES BANK OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, District Court  Cumberland County.
January 14, 1980.
*540 Robert S. Greenberg for plaintiff (Greenberg & Robinson, attorneys).
Michael Benson for defendant (Tuso, Gruccio, Pepper, Buonadonna, Giovinazzi & Butler, attorneys).
MILLER, J.S.C.
This motion for summary judgment on behalf of defendant raises a novel question under the Uniform Commercial Code as enacted in New Jersey, N.J.S.A. 12A:1 101 et seq.: Is a collecting bank estopped from asserting its right to charge-back a depositor's account for the amount of two "raised" money orders drawn on another bank where the collecting bank's head teller has orally certified that the money orders are legitimate?
At the outset it must be noted that a factual question exists as to the exact nature of the conversation between plaintiff and defendant's head teller. Ordinarily the existence of a material question of fact precludes the granting of summary judgment. R. 4:46-2. However, in view of the uniqueness of the issue *541 presented it was necessary to first determine whether the factual question would materially affect the outcome of this case.
The pertinent facts are as follows: On April 30, 1979 plaintiff arranged to meet with a person who identified herself as Thelman Ellis for the purpose of offering for sale to Ellis a diamond ring which plaintiff kept in a safe-deposit box at defendant bank. The parties met at defendant bank, at which time the person who identified herself as Thelman Ellis offered to purchase plaintiff's ring for $1,600 by means of two money orders drawn on the Germantown Savings Bank and made payable to plaintiff in the amounts of $1,000 and $600, respectively.
Before accepting the money orders plaintiff alleges that she presented them to the head teller of defendant bank and requested that the teller certify as to their legitimacy. Plaintiff further alleges that upon being advised by the teller that the money orders were legitimate she accepted them and turned the ring over to Ellis. The money orders were then deposited by plaintiff in her checking account with defendant bank and were thereafter returned unpaid by the Germantown Savings Bank because the amounts thereon had been materially altered or "raised." As a result of the return of the checks defendant charged back the amount of $1,600 to plaintiff's account. Plaintiff contends that she relied to her detriment on the bank's expertise and as a result has suffered damages in the above amount.
Defendant, on the other hand, contends that its representative was not asked to certify as to the legitimacy of the money orders and that by depositing the money orders in her account plaintiff warranted to defendant that the items had not been materially altered. N.J.S.A. 12A:3 417.
A collecting bank's right of charge-back or refund is set forth in N.J.S.A. 12A:4 212(1):
If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the *542 bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. These rights to revoke, charge-back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final (subsection (3) of 12A:4 211 and subsections (2) and (3) of 12A:4-213).
A provisional settlement in the case of a deposit of a money order drawn on another bank amounts to a credit to the depositor's account for the amount of the item. This settlement becomes final when the item is finally paid by the payor bank. N.J.S.A. 12A:4 212, 4 211; 4 213. Once settlement becomes final the collecting bank is accountable to its customer for the amount of the item and any provisional credit given for the item becomes final also, N.J.S.A. 12A:4 213(3). When settlement becomes final and the collecting bank has had a reasonable opportunity to learn that the settlement is final, the credit given by the bank for the item deposited becomes available for withdrawal as of right. N.J.S.A. 12A:4 213(4)(2).
Thus, until settlement becomes final, i.e., until the payor bank has paid the item, the collecting bank has the right to charge-back the customer's account for the amount of the dishonored item and obtain a refund of any amounts withdrawn pursuant thereto. N.J.S.A. 12A:4 212(1).
It is plaintiff's contention, however, that the collecting bank is estopped from utilizing its statutory right of charge-back when the bank's representatives certify to the customer that items drawn on another bank which she intends to deposit are "legitimate."
By its terms the Uniform Commercial Code provides that unless displaced by a particular provision, the principles of law and equity, including the law relative to estoppel, shall supplement its provisions. N.J.S.A. 12A:1 103.

*543 (2) Each customer and collecting bank who transfers an item and receives a settlement or other consideration for its warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that
(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and
(b) all signatures are genuine or authorized; and
(c) the item has not been materially altered; and
(d) no defense of any party is good against him; and
(e) he has no knowledge of any insolvency proceeding instituted with respect to the maker or acceptor or the drawer of an unaccepted item.
In addition each customer and collecting bank so transferring an item and receiving a settlement or other consideration engages that upon dishonor and any necessary notice of dishonor and protest he will take up the item.
(3) The warranties and the engagement to honor set forth in the two preceding subsections arise notwithstanding the absence of indorsement or words of guaranty or warranty in the transfer or presentment and a collecting bank remains liable for their breach despite remittance to its transferor. Damages for breach of such warranties or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any. [Emphasis supplied]
The issue, then, is whether the bank has waived its right to assert breach of the warranty that the check has not been materially altered by virtue of the teller's alleged oral representation that the money order was "legitimate." Research discloses no New Jersey case on point. However, in First National Bank of Denver v. Ulibarri, 557 P.2d 1221 (1976), the Colorado Court of Appeals held that where a bank representative had told a customer that a check deposited by him was "finally settled" the bank would have to bear the loss when the check was returned to it from the payor bank marked "no account." Defendant in Ulibarri was a jewelry dealer who had received a check for $3,450 drawn on another bank in payment for a diamond ring. Before releasing the ring to the purchaser, defendant deposited the check in his account with plaintiff bank in order to determine if the check would be paid by the drawee *544 bank. After being informed by the bank employee that the check was "finally settled" Ulibarri released the ring to the purchaser and drew a check on his own account for $3,500 which was duly paid. Six days later he was told that the deposited check was dishonored and that as a result his account was overdrawn. When the bank refused to place sufficient funds in his account to cover the overdraft suit was instituted.
The Colorado court held on appeal that the elements of equitable estoppel were present, i.e., the bank's conduct in leading Ulibarri to believe that the check had been finally settled, upon which Ulibarri relied to his detriment, precluded it from recouping the amount of the deposited check. Furthermore, the principle that an indorser is liable on his warranty was specifically held to have no application when an estoppel was created which would preclude the bank from obtaining a refund of the amount paid to its customer.
In one important respect, however, Ulibarri is distinguishable from the case at bar and thus not dispositive of this litigation. There is a clear distinction between the case where a bank tells its customer that an item deposited has been "finally settled" and the case where a depositor inquires as to the legitimacy of an item he intends to deposit. With respect to the latter situation guidance may be found in pre-Code law. Espy v. First Nat'l Bank of Cincinnati, 85 U.S. 604, 18 Wall. 604, 21 L.Ed. 947 (1873); Central Nat'l Bank v. F.W. Drosten, 203 Mo. App. 646, 220 S.W. 511 (App.Ct. 1920); Parke v. Roser, 67 Ind. 500, 33 Am.Rep. 102 (Sup.Ct. 1879); Redington v. Woods, 45 Cal. 406, 13 Am.Rep. 190 (Sup.Ct. 1873). Each of these cases concern the liability of a drawee bank for representations as to the legitimacy of a check sought to be deposited or cashed. The general rule was well stated in Espy, 21 L.Ed. at 941 952:
If the bank officers had their attention turned to the matter of the raising of the check, or even had notice that in applying to them for information the parties presenting it did so for the purpose of getting information which would include that subject, they could have limited their general statement that it was *545 good so as to exclude its application to that point, or might have declined answering altogether. If, with this notice, says the court, they gave a general statement that the check was good, or all right, these words must be held to have reference to all the matters on which they knew that the other party asked or desired their opinion. [at 950-951]
* * * * * * * *
Under these circumstances, we are of opinion that the circuit court was right in holding that in the absence of anything tending to direct his attention to other matters, the bank officer had a right to suppose that information was desired of him only in regard to the signature of the drawers and the state of their account. These were material facts to be known, which both common sense and commercial law presumed to be within his knowledge. The answer he gave: that the check was good or was all right, must be supposed to be responsive only to these two points. The genuineness of the payee's name and of the sum filled in the body of the check were as well known and as easily ascertainable by the payees themselves as by the bank officer, and unless the inquiry was so framed as to call his attention to these points, he had no reason to suppose, in the nature of the transaction that he was expected to give information in regard to them. So the response of "good" should not on sound principle be held to extend to them. He was under no moral or legal obligation to give an opinion that the check was good in the only points of which he knew anything, it would be illogical to hold the bank liable on the ground that the response meant good absolutely and for all purposes. [at 952]
In the instant case the inquiry was made of a teller at the collecting bank, not the bank upon which the check was drawn. Until the check was presented to the payor bank for final settlement, the collecting bank would have no knowledge as to the legitimacy of the signature or the state of the drawer's account. The distinction between a check and a money order, however, is that the latter is frequently issued, as here, with the amount printed on the face by the drawee. Thus, by checking its records a drawee could determine whether or not the amount for which the money order had originally been drawn was raised or altered. A collecting bank would not have such information without first checking with the drawee and, giving the most liberal interpretation to the cases cited above, it would have no *546 duty to make such inquiry unless specifically put on notice that this information was desired.
The only exception to the general rule in the case of a drawee bank is where the alteration is made in such a manner that on the face of the instrument there appears enough to excite a reasonable suspicion of fraud. Redington v. Woods, supra, 45 Cal. at 422. In that case it would be the teller's duty to decline payment until the doubt was removed. Id. at 422.
Ordinarily a collecting bank's only duties to a customer presenting an item for deposit are to send the item to the payor bank by a reasonably prompt method and to use ordinary care in presenting the item for payment, sending notice of dishonor or nonpayment to a customer after learning that the item has not been paid or accepted, settling for an item when the bank receives final settlement, making or providing for any unnecessary protest and notifying its customer of any loss or delay in transit within a reasonable time. N.J.S.A. 12A:4 204, 4 202(1).
Where inquiry is made as to the legitimacy of a money order drawn on another bank, Ulibarri would appear to impose a duty on the collecting bank to give accurate information as to facts within its knowledge, such as whether the item has been finally settled. As to facts outside its immediate knowledge a collecting bank should not be held to a higher duty of disclosure unless it is specifically put on notice that this information is sought or unless the facts indicate an obvious alteration in the amount of the money order so as to excite a reasonable suspicion of fraud.
In light of the uncertainty in this case as to plaintiff's actual words of inquiry, the surrounding circumstances, if any, which would have put the bank's teller on notice that attention was directed to the accuracy of the face amount of the money order, and the quality of the alteration, a factual question clearly exists which precludes summary judgment.
Defendant's motion is denied.