In re Freeman Jimmit HOLCOMBE, Patricia Ann Holcombe, Debtors.

BRAD RAGAN, INC., Plaintiff,

v.

Freeman Jimmit HOLCOMBE, Patricia Ann Holcombe, Defendants.

Bankruptcy No. 3-81-01727. Adv. No. 3-82-0079.

United States Bankruptcy Court, E.D. Tennessee.

Sept. 23, 1982.

that she has an exemptable interest in the goods.

David A. Lufkin, Zwick Law Offices, P.C., Knoxville, Tenn., for plaintiff.

Robert B. Carter, Johnson City, Tenn., for defendants.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Plaintiff, Brad Ragan, Inc., alleges the nondischargeability of a debt owing by the defendants in the amount of $23,042.30. 11 U.S.C.A. § 523(a)(2)(A) (1979).[1] Trial was held April 16 and May 5, 1982. The defendants did not appear on either date.

In its complaint, Brad Ragan alleges that in October 1981 Freeman Holcombe, a self-employed tire salesman, purchased and received $23,042.30 worth of tire products which were paid for by a postdated personal check; that he stopped payment on the check on or before October 31, 1981; that he did not return any of the merchandise purchased, and that, a few days later, on November 12, 1981, he filed a petition in bankruptcy. The debtors' bankruptcy schedules reflect no "inventory" and less than $1,000.00 in cash deposits.

In his answer the defendant[2] Holcombe admits that he purchased tires from Brad Ragan in the amount of $23,042.30 but asserts that he purchased those tires over a "long period of time," and that the postdated check given Brad Ragan represented payment of previous purchases on open account. He denies that he ever initiated a scheme or attempted to obtain any property by false pretenses or false representations.

Plaintiff's proof adduced at trial varies somewhat from the allegations stated in the complaint. In fact, plaintiff's proof adduced on April 16th varies in some respects from its proof of May 5th. Despite these discrepancies, however, the court believes that the totality of the proof supports the plaintiff's position that the debt is nondischargeable.

From the plaintiff's often confusing testimony and the garbled exhibits introduced at trial, the court discerns and finds the facts to be as follows:

On two occasions prior to October 1981, Holcombe purchased tires from plaintiff and gave a personal check in payment thereof. On one occasion the purchase amounted to some $1,500.00 and on a second occasion to approximately some $5,000.00. Both times Holcombe's check cleared the bank without difficulty. During the next

1. A discharge ... does not discharge an individual debtor from any debt—

. . . .
(2) for obtaining ... property ... by
(A) False pretenses, a false representation, or actual fraud .... 11 U.S.C.A. § 523(a)(2)(A).

2. Defendant as used herein refers to Freeman Jimmit Holcombe. Although the complaint includes Patricia Ann Holcombe as a defendant, there is no proof that she participated in the business transactions involved in this proceeding. The $23,042.30 check identifies the account on which it was drawn as the account of Patricia Ann Holcombe, however, the check was signed by Freeman Holcombe. The complaint will be dismissed as to Patricia Ann Holcombe.

few weeks, apparently in September and October, Holcombe made purchases from the plaintiff in the following amounts: $2,385.39, $9,452.90, $2,450.60, and $8,265.84. About October 19, 1981, he gave a check postdated to October 31, 1981, to plaintiff in the amount of $23,042.30.[3]

On October 29, 1981, Holcombe wrote plaintiff claiming that he had been overcharged for several tires, that he did not receive credit for $1,500.00 and $5,000.00 paid on his account, and that he was billed for five tires that he didn't receive. He concluded the letter by stating that he had stopped payment on the "promisserie [sic] note" but that he would pay his bill "when you get this right." Holcombe's reference to stopping payment on the "promisserie note" refers to the check dated October 31, 1981, in the amount of $23,042.30 (Exh. 3). Stamped thereon is the notation "payment stopped." At the § 341 examination, Holcombe testified that the reason he stopped payment on the check was that he didn't have the money in the bank to cover the check.

Within a matter of days after the transactions with Brad Ragan, Holcombe filed a petition in bankruptcy. As heretofore stated, he scheduled no inventory. The schedules reveal that the defendant and his wife had only $350.00 cash on hand and that his wife had $575.00 on deposit. He testified at the § 341 meeting that he had sold all of the tires. He produced no books nor records concerning his business transactions. Nor has he explained the disposition of the funds realized from the sale of the tires, which should amount to at least some $23,-000.00 plus, even if he sold the tires at the wholesale price for which he purchased them.

Holcombe had ample opportunity to explain the transactions with Brad Ragan. His response has been to absent himself from the trial on the complaint to determine dischargeability on three occasions. The trial scheduled for April 5, 1982, in Greeneville, Tennessee, was continued when

his attorney stated that Holcombe had telephoned that he was ill; on April 16, 1982, in Knoxville, Tennessee, the debtor failed to appear. Again, in Greeneville, Tennessee, on May 5, 1982, the debtor failed to appear. Thus, unexplained in this record is the disposition of merchandise of a value in excess of $23,000.00 obtained within a few days before bankruptcy.

■ 11 U.S.C.A. § 523(a) prohibits discharge from any debt "(2) for obtaining . . . property . . . by—(A) false pretenses, a false representation, or actual fraud . . . ." Although fraud is never presumed and it is settled doctrine that the term "fraud" in the acts of Congress defining a debt excepted from discharge means "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality," *Neal v. Clark,* 95 U.S. 704, 709, 24 L.Ed. 586 (1878), fraud may be implied "[I]f the totality of the circumstances presents a picture of deceptive conduct" by the debtor which indicates that he intended to cheat and deceive. See *Matter of Clark,* 1 B.R. 614 (Bkrtcy.M.D. Fla.1979).

> [W]hile fraud is never presumed and evidence showing the possibility of fraud or showing circumstances which might create a suspicion of fraud are not sufficient, . . . the fraud may be found to exist, even in the absence of direct proof, which, of course is rarely available. If the totality of the circumstances present a picture of deceptive conduct by the borrower [the purchaser] which indicates that the borrower [purchaser] intended to deceive and cheat the lender [seller], the intended falsehood, coupled with this conduct, is sufficient to establish the requisite intent required under the Act. *Matter of Clark,* 1 B.R. at 617.

■ The "totality of the circumstances" in the case before this court is overwhelming. Not only is there no explanation for

**3.** This check was tendered in satisfaction of purchases apparently made in September and October of 1981 and a previous unpaid balance of $487.57.

the debtor's conduct, the disposition of the tires, the disposition of the funds received, the debtor, on three occasions, failed to appear at trial. The court is satisfied that the debtor set up the seller with two substantial cash purchases and that the debtor had no intention of paying for the later purchases when he shortly thereafter "conned" Brad Ragan into letting him have some $23,000.00 in merchandise, since almost immediately thereafter the debtor filed a petition in bankruptcy and has failed utterly to account for any funds realized from the sale of the tires. Such conduct does not justify discharging the debt owing to plaintiff.[4] The cases are legion which point out that the purpose of bankruptcy legislation is to relieve the honest debtor from financial difficulties—not to provide a shield for the dishonest.

The legislative history of 11 U.S.C.A. § 523(a)(2) indicates that § 17(a)(2) of the Bankruptcy Act was "modified only slightly." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 363, 364 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 77, 78 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

Collier notes that "[A] purchase of goods on credit by a bankrupt who does not intend to pay therefor, constitutes a false representation." 3 Collier On Bankruptcy, § 523.08, 523–44 n. 19 (15th ed. 1979).

Plaintiff has shown to the satisfaction of the court that there are reasonable grounds for believing that the debtor obtained the merchandise (tires) by false representations, with no intention to pay for them. In other words, plaintiff has satisfied its burden by proving facts essential to its claim of nondischargeability. Rules Bankr.Proc. 407, 11 U.S.C.A. The debtor has not met his burden of going forward with the evidence. The debt is nondischargeable. 11 U.S.C.A. § 523(a)(2)(A).

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

---

**4.** It is difficult to understand why the trustee or a creditor did not file objections to the debtor's discharge. None was filed, however, and the court is required to grant the discharge. 11

U.S.C.A. 727(a). In addition to the Brad Ragan debt scheduled by the debtor, some $6,000.00 in other debts are scheduled.