**In re Oscar DIAZ DE VILLEGAS and Elvia De Diaz De Villegas, Debtors.**

**CARIBANK, N.A., Plaintiff,**

v.

**Oscar DIAZ DE VILLEGAS and Elvia De Diaz De Villegas, Defendants.**

**Bankruptcy No. 82–00002–BKC–JAG. Adv. No. 82–0246–BKC–JAG–A.**

United States Bankruptcy Court, S.D. Florida.

Sept. 7, 1983.

Jack F. Weins, Hollywood, Fla., for plaintiff.

Robert E. Venney, Miami, Fla., for debtors.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

In this adversary proceeding Plaintiff, Caribank, N.A., objected to the discharge of certain debts to it. The basis of the objection is that the debts fall within the exception of 11 U.S.C. § 523(a)(2)(B) for obtaining money through the use of a false financial statement.

During the period in question Defendant Oscar Diaz de Villegas was the sole or major shareholder and President of three corporations. Sistemas Culturales de Guatemala, S.A., a Guatemalan corporation, and Sistemas Culturales Britannia, S.A., a Costa Rican corporation, were in the business of selling encyclopedias. Oscar Diaz de Villegas, Inc., a Puerto Rican corporation, provided text books. These corporations owed debts totaling around $300,000.00 to three major creditors, all of which were guaranteed by the Debtors. (Plaintiff's Exhibit No. 1) In 1981, Oscar Diaz de Villegas sought additional financing from the Plaintiff Bank for Britannia. He was successful in obtaining the financing in the principal amount of $20,000.00 on January 30, 1981, $25,000.00 on February 9, 1981 and $5,000.00 on March 11, 1981 (Plaintiff's Composite Exhibit No. 4), but the Debtors were required to give an unlimited guaranty of the debt (Plaintiff's Exhibit No. 5). At this time the Debtors also provided to the Bank their financial statements dated June 30, 1979 and July 31, 1980 (Plaintiff's Exhibits 2 and 3, respectively). Although Mrs. Diaz de Villegas did not sign the financial statements, there can be no doubt that

her husband was authorized to make the representations regarding her financial status. It was the Debtor's testimony that a currency devaluation essentially caused the financial collapse of his Latin American companies which resulted in these notes not being paid. Caribank now seeks to prevent the discharge of the Debtors' personal guaranty.

Section 523(a)(2)(B) excepts from discharge debts incurred through the use of a false financial statement. Specifically, the debtor must have used a statement in writing

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

The first basis for the Plaintiff's objection to dischargeability is that the Debtors substantially overvalued, and thus falsely represented the value of, their household furniture, home library, and jewelry. The Bank bases its factual argument on the discrepancy in values between the financial statements and the values attributed to these items on the Debtors' schedules. The Debtors argue, and Mr. Diaz de Villegas testified, that the financial statements showed the assets at cost or estimated fair market value, while the schedules show liquidation value. In addition, Mr. Diaz de Villegas testified that a major part of the jewelry had been sold prior to bankruptcy.

The evidence is insufficient for the Court to conclude that the values given in the financial statements were falsified with the intention of deceiving the Bank. More importantly, this Court concludes that it was not reasonable for the Bank to rely on the valuations given in the financial statements for the assets involved here. The library consisted of eight thousand volumes and was valued by the Debtors at $32,000.00 on the July 31, 1980 financial statement. This was so unusual an asset that the Bank

should not have extended credit on the basis of this representation without making further inquiries of its own.

The more significant contention of Caribank is that the financial statement was intentionally false because of the omission of the Debtors' contingent liabilities, specifically, the prior individual guaranties of other corporate indebtedness. The Debtors argue that they had no intent to deceive the Bank by the omission, that the Bank did not reasonably rely upon the absence of these contingent liabilities, and that the information was not materially false because at that time the corporations which were the primary obligors on the indebtedness in question had adequate assets to offset that indebtedness, including certificates of deposit in Miami banks.

John Ransdell, Vice President in charge of loan administration for Caribank, testified that he received and examined the financial statements. The Bank does not make loans to offshore corporations and therefore it would not have made this loan without being satisfied of the Debtors' financial condition and receiving their financial statement. He testified further that the Debtors' guaranty would not have been acceptable to the Bank had it known of their contingent liability because the corporate creditors were overseas. The Bank rejects such credit applications automatically, rather than trying to evaluate the situation. However, Ransdell admitted that the Bank would not be concerned about guaranteed debts where there was sufficient cash collateral to set off the indebtedness. Although the Bank's application form for a loan has a question regarding contingent liabilities, the Debtors were not required to fill out such an application, and Ransdell does not recall whether or not he asked Mr. Diaz de Villegas about contingent liabilities.

Mr. Diaz de Villegas testified that no one at the Bank told him how to value his assets or prepare a financial statement. He testified that his C.P.A. prepared the statement and that he relied on the C.P.A. to handle it properly. The Debtors' C.P.A., Julian Ca-

sal, testified that he had a two to three hour conference with Mr. Diaz de Villegas to obtain the information for the financial statement initially. He did not recall if there was any discussion regarding contingent liabilities, but knows that the guaranties were not discussed.

■ The Court concludes that there is insufficient evidence that the Debtors intended to deceive the Bank by the omission of the contingent liabilities on the financial statements, or evidence from which an inference of intent could be drawn. The fact that there is no direct evidence of intent will not preclude a judgment for a plaintiff under this section, because often intent must be inferred from the circumstances. Here, however, there was no evidence that the necessity of including contingent liabilities of the type in question was specifically brought to the attention of Mr. Diaz de Villegas when he prepared the financial statements. To find intent, the Court would have to assume that any businessman such as Mr. Diaz de Villegas must know that the financial statement was incorrect without that inclusion. This is too big a gap to jump here. Mr. Diaz de Villegas may have believed that there was no necessity for listing these debts because of the adequate assets of the primary obligors, or he may not have thought about it at all and relied on his accountant. If all businessmen were as sophisticated as they "ought" to be there would be many fewer problems in business. As stated by the Court in *Wolfe v. Tri-State Insurance Company,* 407 F.2d 16, 19 (10th Cir.1969): "They had every right to rely upon [their CPA] to make a correct statement, as do even sophisticated men of long business experience rely upon their trusted CPA to handle these affairs." If the Debtor here had been instructed by the Bank to include guaranties previously made, or even probably if he had been instructed to include contingent liabilities, his use of the CPA could not absolve him of responsibility for accuracy. But without some such evidence Plaintiff has not carried its burden of proof of the fourth element of sub-section (B).

■ In addition, the Court concludes that it was not reasonable for the Bank to rely on the absence of these guaranties from the financial statements and therefore the third element has not been satisfied either. Essentially the same evidence and considerations are applicable to the issue of reliance. Although financial statements are in common usage in the business world, here the Bank took a financial statement instead of its loan application form. The application form requested information on contingent liabilities but there is no evidence that the Bank brought that to the Debtors' attention here. Mr. Ransdell testified that he did, in fact, rely on the absence of contingent liabilities on the financial statement in approving the loan, but because of the departure from the Bank's usual practice and the question of Mr. Diaz de Villegas' knowledge that he should show these guaranties, the Court concludes that it was not reasonable for the Bank to so rely.

Most of the cases cited by the Plaintiff are distinguishable on their facts often because the facts show that information on contingent liabilities was specifically requested. In *Deel Rent-A-Car, Inc. v. Levine, In re Levine,* 6 B.R. 54 (Bkrtcy.S.D.Fla. 1980), aff. 16 B.R. 873 (D.C.S.D.Fla.1982), the Debtor listed "0 dollars" five times in five separate categories under "Contingent Liabilities" on his financial statement. In *In re Bebar,* 315 F.Supp. 841 (E.D.N.Y.1970) the debtor left blank on the bank's financial statement form all parts of the section on contingent liabilities, which enumerated many items such as "Accommodation Endorser, Guarantor or Surety".

In *Smith v. Rahm, In re Rahm,* 1 B.R. 631 (Bkrtcy.E.D.Va.1979), the many paragraphs and counts involved several different transactions. On a count premised on a false oath given at a Rule 205 examination, Plaintiff alleged that the Defendant had given false testimony regarding his knowledge of the financial condition of his companies and his failure to list a tax liability as a contingent liability on his personal financial statement. The Court noted that the debtor left blank the spaces provided

for contingent liabilities, and his testimony that he did so because the tax liability was "not a sure thing" was not consistent with his listing a "possible asset" under the assets section. However, on another count, where the defendant had omitted a guaranty from a financial statement he supplied to a bank, the Court concluded that, as a former comptroller of Barnum & Bailey Circus, having considerable experience in financial matters, the defendant must have known that the omission was erroneous.

In *Medi-Fund Corporation v. Cross, In re Cross*, 3 B.C.D. 615 (D.C.N.D.Cal.1977) the District Court remanded to the Bankruptcy Court to determine whether the Debtor's financial statement was materially false because of the omission of contingent liabilities from it. The District Court noted that in all of the cases it had examined, information about contingent liabilities had been specifically requested by the creditor, but held that it would not be impossible to make a finding of material falsity despite the lack of a specific request, and that the entire record should be considered. In *Nationwide Financial Corporation v. Smith, In re Smith*, 2 B.R. 276, 5 B.C.D. 1265 (Bkrtcy. E.D.Va.1980), the debtor had made a mail order loan application and omitted a number of guaranties. He testified that he thought only primary, and not contingent liabilities were to be listed. The Court noted that the debtor was "an erstwhile automobile rental agency owner and used car proprietor"; that he was not "some naive consumer who just walked into a loan office," but "an experienced businessman operating a large operation;" and concluded that he knew the financial statement was false. However, the Court also concluded that the creditor's reliance on this financial statement was unreasonable, and therefore did not except the debt from discharge.

In each of the cited cases where a debt was excepted from discharge, the creditor had either specifically requested information about contingent liabilities and the debtor ignored or falsely answered it, or there was other evidence which led the Court to believe that the debtor knowingly omitted contingent liabilities. The record as a whole here is insufficient for the Court to so conclude and therefore the personal guaranties made by the Debtors in favor of the Plaintiff Caribank will not be excepted from discharge.

Pursuant to B.R. 921(a) a separate Final Judgment is being entered this date.

DONE AND ORDERED at Miami, Florida, this 8th day of September, 1982.