**In re Merlyn YAGOW and Delores Yagow, Debtors,**

**SARGENT COUNTY BANK, Plaintiff,**

**v.**

**Merlyn YAGOW, Defendant.**

**Bankruptcy No. 85–05257.
Adv. No. 85–7122.**

United States Bankruptcy Court,
D. North Dakota.

May 2, 1986.

**110**

U.S. Trustee, William P. Westphal, Atty. William A. Schlossman, Jr., Fargo, N.D., for plaintiff.

Atty. Jane M. Freeman, Grand Forks, N.D., for defendant, debtor Merlyn Yagow.

## MEMORANDUM OPINION AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The instant adversary action was commenced by Sargent County Bank (BANK) by Complaint filed November 26, 1985, alleging a right to indemnification from the Debtor and a determination of non-dischargeability under section 523(a)(2) to the extent of such indemnification. Answering, the Debtor, Merlyn Yagow, denies responsibility for the damages allegedly sustained and additionally argues that no damages have actually been sustained. The case came on for trial on April 28, 1986. The Debtor indicated at that time that he wished to proceed pro se and was prepared to go forward with his defense. An Oral Motion for trial by jury was denied prior to the Bank presenting its case.

### FINDINGS OF FACT

From the evidence presented the facts as material are summarized as follows:

Commencing in 1980 the Debtor began to have disagreements with Production Credit Association. (P.C.A.) These disputes became so severe that by 1984, P.C.A., who claimed a security interest in all the Debtors' crops, required that all checks stemming from the sale of any crops name P.C.A. as co-payee. At all times material the Debtor was aware of this requirement and knew that he would not be able to cash checks without P.C.A.'s endorsement.

In December, 1984 the Debtor sold 4,500 bushels of corn to Ronald Bergeman who paid by personal check made payable to "Merlyn Yagow and (using a "+" sign) P.C.A." in the sum of $11,956.88. This check was endorsed only by Merlyn Yagow and presented to the Bank for cashing on April 4, 1985. The Bank cashed the check and deposited the proceeds in the Debtor's account. In July, 1985 the Debtor sold 371 bushels of corn to Merlin Claus who also paid by personal check dated December 31, 1984. According to Mrs. Claus, because she was advised of P.C.A.'s claim to the proceeds she made out the check in the sum of $897.82 to "D & M Trust (Delores and Merlyn Yagow) and ("+") P.C.A.". This check was presented to the bank for payment on April 16, 1985, and when presented the "+" had been changed to "or". The Bank cashed the check and deposited the proceeds in the account of D & M Trust. In March, 1985, the Debtor sold 2,345 bushels of corn to Farmer's Co-op Elevator, Co. who paid by check payable to "Merlyn Yagow, Alvin Yagow, P.C.A." in the sum of $5,698.71. According to the Elevator's manager, he knew P.C.A. claimed an interest in the corn and that was the reason P.C.A.'s name was placed on the check. This check, dated March 13, 1985, was presented to the bank by the Debtor on April 9, 1985. When presented, the comma between Alvin Yagow and

P.C.A. appeared as "or". The Bank cashed this check and deposited the proceeds in the Debtor's account.

None of the checks were endorsed by P.C.A.. Each bore the endorsement of Merlin Yagow only together with a stamped notation, "all other endorsements guaranteed". A Bank officer testified that in cashing the checks, she relied upon the manner in which they had been presented, believing them to be unaltered and properly endorsed. She understood from common bank practice that a check made out using the word "and" required all payees to endorse while use of the word "or" permitted endorsement by only one payee. The three checks remained in the exclusive custody and control of Merlyn Yagow from the time of their receipt to the time of presentment to the Bank.

P.C.A. commenced an action against the Bank in North Dakota State District Court for recovery of all sums paid over to the Debtor, alleging in its complaint that the Bank breached its duty as collecting bank in making payment of altered checks without obtaining the required endorsements all in violation of North Dakota Century Code section 41–04–17 (U.C.C. § 4–207).

## CONCLUSIONS OF LAW

The Bank alleges in the present adversary case that the check alterations were made by Merlyn Yagow with the fraudulent intent to obtain payment without the necessary endorsement of P.C.A. and consequently, to the extent it may be liable to P.C.A., it is entitled to non-dischargeable indemnity from the Debtor.

For a creditor's right to indemnity from a debtor in bankruptcy to be rendered non-dischargeable the indemnity obligation must meet one of the enumerated exceptions to debt dischargeability set out in section 523 of the Bankruptcy Code. In the instant case contingent non-dischargeability is premised upon section 523(a)(2)(A) which provides in part:

"(a) a discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt ...

(2) for money, property, services, or an extension renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, ...."

The fraud alleged to have occurred in this case is the material alteration to the checks by the Debtor, a joint payee, which caused the Bank to mistake the checks as being payable in the alternative to several payees including the Debtor. Fraud, whether alleged under state law or in a section 523 bankruptcy action, is never presumed but must be proved by clear and convincing evidence. *In re Mutschler*, 45 B.R. 482 (Bankr.D.N.D.1984); *In re Wightman*, 36 B.R. 246 (Bankr.D.N.D.1984); *Buehner v. Hoven*, 228 N.W.2d 893 (N.D. 1985). In order to successfully maintain a cause of action under section 523(a)(2)(A) of the Bankruptcy Code, the following elements must be established:

(1) the debtor made representations;

(2) that at the time made, he knew them to be false;

(3) that the representations were made with the intent and purpose of deceiving the creditor;

(4) That the creditor reasonably relied on the representations;

(5) that the creditor sustained the alleged injury as a proximate result of the representations having been made.

*See In re Houtman*, 568 F.2d 651 (9th Cir.1978); *In re Vickers*, 577 F.2d 683 (10th Cir.1978); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967); *In re Mutschler, supra; In re Wightman, supra.* Each of the foregoing elements enumerated above need not be individually identified in a particular case since a person's intent is often incapable of direct proof and may be inferred from the totality of circumstances surrounding a transaction. *Shainman v. Shears of Affton, Inc.*, 387 F.2d 33 (8th Cir.1967); *In re Pommerer*, 10 B.R. 935 (Bankr.D.Minn.1981). Similarly, the element of fraud itself may be implied from the circumstances if those circumstances

present a clear showing of deceptive conduct on the part of a debtor which indicates an intent on his part to cheat and deceive. *In re Diaz DeVillegas,* 26 B.R. 600 (Bankr. S.D.Fla.1983); *In re Holcombe,* 23 B.R. 590 (Bankr.E.D.Tenn.1982). The court in *Holcombe* held that if the totality of the circumstances present a picture of deceptive conduct which indicates an intent to cheat and to deceive, the intended falsehood, coupled with this conduct, is sufficient to establish the requisite intent. *Holcombe,* 23 B.R., at 592.

As payee on a check, a person obtaining payment warrants to the collecting bank who cashes it that he has good title to the check or is authorized to obtain payment on behalf of one who has good title. He further warrants that the check has not been materially altered. *See* N.D.C.C. § 41–03–54 (U.C.C. 3–417). *See generally Dozier v. First Alabama Bank of Montgomery, N.A.,* 363 So.2d 781 (Ala.1978 Cir.App.). N.D.C.C. § 41–03–16 (U.C.C. 3–116) specifies further that a check payable to the order of two or more persons and in the alternative payable to any one of them may be negotiated by any of them who has possession. If however, the jointly issued check is not in the alternative payable to one, it is payable to all payees and can only be negotiated by all of them. Any alteration in a check is material which changes the contract of any party thereto in any respect including the number or relation of the parties and the addition or removal of any part of the check as originally signed. *See* N.D.C.C. § 41–03–44 (U.C.C. 3–407).

Each of the three checks were originally drawn naming P.C.A. as joint payee and thereby requiring P.C.A.'s endorsement for negotiation. At the time of receiving payment on the three checks, Merlyn Yagow under applicable commercial law made two warranties. He first warranted he had good title to the checks and/or was authorized to receive payment on behalf of P.C.A. In addition, he warranted that the checks had not been materially altered. ■ The evidence is clear that two of the checks were altered between the time they

were given to the Debtor by the drawer and the time the Debtor presented them to the Bank to be cashed. The checks from the Elevator and the Claus' had been changed from joint payee checks requiring all payee endorsements to alternative payee checks requiring the endorsement of only one payee. Merlyn Yagow is the only person who had custody of the checks and the only one who had the motive and means to make the alterations. The Court believes that the changes in the Elevator and the Claus' checks were made by the Debtor with the knowledge that they would have the effect of requiring only his endorsement and thereby avoid endorsement by P.C.A. and probably turnover of the proceeds to P.C.A., as P.C.A. had previously requested. These alterations constituted material alterations under N.D.C.C. 41–03–44 because they changed the checks as originally drawn and changed the relationship of the payees from joint to several. Being a material alteration, Merlyn Yagow by causing the same to be done breached his presentment warranty to the Bank.

■ The Bergeman check had not been altered when presented and does not violate section 41–03–44 of the North Dakota Century Code. However, the Debtor testified he knew P.C.A. was claiming an interest in the crop proceeds and was requiring its name on all checks. The Bergeman check as drawn named the Debtor as well as P.C.A. as joint payees requiring both endorsements for proper negotiation pursuant to section 41–03–16 of the North Dakota Century Code. It is evident, by virtue of P.C.A.'s state court venued claim against the Bank that the Debtor was not authorized to receive payment on behalf of P.C.A.. Yet this is precisely what happened. Neither can Yagow claim he had good title to the Bergeman check proceeds to the exclusion of P.C.A. At the time of presentment in April, 1985, there was existing a security agreement in favor of P.C.A. giving it a lien on all crops and specifying that the Debtor's right to dispose of the crops was conditioned upon all checks naming P.C.A. as co-payee. Merlyn Yagow

knew of this requirement at the time of presentment. Whether the Bank violated N.D.C.C. § 41–03–16 in allowing negotiation of the Bergeman check without P.C.A.'s endorsement is not dispositive of the question because Yagow, by presenting the check to the Bank and requesting the proceeds to be deposited in his own account, impliedly represented that he had the exclusive right to the proceeds or had the authority to obtain payment on behalf of P.C.A. neither of which was true at the time. Yagow breached his presentment warranty of authority under section 41–03–54 of the North Dakota Century Code. Moreover, the effect in the case of Bergeman's check which was dishonored by First American Bank of Lisbon, the payor, is to afford Sargent County Bank as collecting bank the right to charge back the check to its customer-here the Debtor. N.D.C.C. § 41–04–22 (U.C.C. 4–212). *See: Burke v. First Peoples Bank of New Jersey,* 172 N.J. Super. 539, 412 A.2d 1089 (1980). The Court concludes that this breach also was done with the intent to avoid the interest of P.C.A.

▮ The breach in the instance of each check was a misrepresentation and concealment of a material fact which if known to the Bank, as collecting bank, would have caused them not to cash the checks. The breach of U.C.C. warranties has been recognized as sufficient to constitute a false representation under section 523(a)(2)(A). In the case of *In re Hogan,* 38 B.R. 922 (Bankr.E.D.Mo.1984), a debtor sold encumbered livestock with knowledge of the encumbrances. Payment was by check, the reverse of which bore the language, "by endorsing the payee warrants that the livestock sold are free and clear of liens and claims". When the debtor retained all proceeds, one of the encumbrancers sued the purchaser who in turn commenced a third-party action for indemnity against the debtor. An adversary complaint was brought in Bankruptcy Court under section 523(a)(2)(A) in order to preserve the contingent indemnity claim. In the adversary proceeding the purchaser alleged that the debtor, by endorsing below the special language, had warranted the livestock to be free of liens which constituted a false statement intended to deceive. The Court, citing U.C.C. § 2–312, held the debtor by such endorsement had warranted the animals to be free of liens which was obviously false. This, said the Court, constituted concealment of a material fact sufficient to constitute fraud under section 523(a)(2)(A).

A similar result must be reached in the case at bar. One who presents a check for payment cannot do so free of the U.C.C. presentment warranties explicit in N.D.C.C. § 41–03–54 and breach of these warranties, by the making of a false statement or concealment of a material fact, constitutes fraud under section 523(a)(2)(A).

This Court is satisfied that if Sargent County Bank is ultimately liable to P.C.A. and suffers damages thereby, those damages were proximately caused by the Debtor's fraud in the guise of breach of presentment warranties. If, of course, P.C.A. does not prevail in it's action against the Bank, then no damages will have been sustained as a consequence of the Debtor's breach and no recovery under section 523(a)(2)(A) may be had.

N.D.C.C. § 41–07–17, upon which P.C.A. apparently premises its state cause of action, defines the warranties made by a collecting bank to a payor bank or another payor who in good faith pays or accepts the instrument. P.C.A. is not a payor but rather was at all times, it seems, a payee. Also, subsequent to presentment and cashing of the subject checks, this Court determined P.C.A.'s security interest in the 1984 crops to be invalid. *In re Yagow,* 62 B.R. 73 (Bankr.D.N.D.1986). Whether P.C.A.'s cause of action premised upon the foregoing North Dakota Century Code provision has merit will be left to the decision of the state court before whom the case is venued.

For the reasons stated, IT IS ORDERED that Judgment be entered in favor of Sargent County Bank against the Debtor for indemnification in such amounts as the

Bank may be found liable to P.C.A., but not to exceed $18,553.41, stemming from presentment of the three (3) checks referred to herein. Any sum for which the Bank is entitled to indemnity is declared to be non-dischargeable under section 523(a)(2)(A) of the Bankruptcy Code.

LET JUDGMENT BE ENTERED ACCORDINGLY.