**In re Dennis P. EDWARDS, Debtor.**

**P & W FOREIGN CAR SERVICE, INC., Plaintiff,**

v.

**Dennis P. EDWARDS, Defendant.**

**Bankruptcy No. 91–2656–BM.**
**Adv. No. 91–0577–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 17, 1992.

Bradley S. Gelder, Weisman Bowen, Pittsburgh, Pa., for plaintiff.

Keith S. Houser, Laurel Legal Services, Inc., Greensburg, Pa., for defendant/debtor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a complaint by P & W Foreign Car Service, Inc. ("P & W") to have a debt owed to it by debtor declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). P & W avers that defendant purchased an automobile from it by writing a check backed by insufficient funds, which amounts to false representation.

Debtor opposes the complaint. Although debtor concedes having written a check backed by insufficient funds, he asserts in the pleadings that his employer was to deposit an amount sufficient to cover the check in debtor's checking account. Said deposit allegedly was to cover wages the employer owed debtor. However, neither debtor nor his employer testified at trial. Therefore, there was no evidence or testimony to substantiate debtor's contention.

Judgment will be entered in favor of P & W and against debtor. The debt owed to P & W is nondischargeable in bankruptcy.

–I–

### FACTS

On December 15, 1990, P & W Foreign Car Service, Inc. and debtor entered into an Agreement of Sale ("Agreement") for the purchase of a 1986 Model 735i BMW Sedan.

Debtor, accompanied by his employer, Thomas Akins ("Akins"), wrote Check No. 0207 in the amount of $20,664.00 to cover the balance due on the automobile. Because the parties entered into the Agreement on a Saturday, when local banks were closed, the salesperson supervising the Agreement asked for the approval of C. Thomas Sawyer ("Sawyer"), P & W's sales manager. Debtor represented to P & W

that funds sufficient to cover the amount of the check had been deposited in debtor's account on Friday, December 14, 1990. According to Sawyer, Akins never represented that he was the person who was to deposit the funds for the automobile into debtor's account. Debtor also requested that Sawyer not deposit the check in P & W's account until Monday, December 17, 1990, in order to give the check deposited in debtor's account that previous Friday sufficient time to clear. Sawyer replied that because banks were closed on Saturday, the check would be deposited on Monday.

Based on debtor's representations as to the sufficiency of funds in his checking account, Sawyer approved the Agreement and delivered the automobile to debtor on December 15, 1990. When the check was deposited by P & W on the following Monday, debtor's bank refused to honor it because of insufficient funds.

Debtor never paid the balance due to P & W but instead the car was repossessed by P & W some time later. Although P & W was able to resell the car, it did so at a lower price. In addition, P & W paid the Commonwealth of Pennsylvania $1,194.00 in non-refundable sales tax at the time of the sale of the automobile to debtor and expended $15.00 in title fees and $24.00 in registration fees, both of which were non-refundable. The parties also have stipulated that the debtor damaged the automobile while it was in his possession.

Not only did debtor lack funds sufficient to cover a check for $20,664.00 on the date he wrote the check, he also lacked sufficient funds six (6) months prior to and six (6) months after he wrote the check. Moreover, debtor's 1990 1040EZ Income Tax form indicates that he earned only $9,651.48 in all of 1990.

–II–

## ANALYSIS

11 U.S.C. § 523(a)(2)(A) provides as follows:

(a) A discharge under sections 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...

As P & W points out, there are two lines of cases concerning whether a check written on insufficient funds constitutes fraud. One line of cases adopts a *per se* rule:

When a person issues a check, he impliedly represents that there are sufficient funds available to honor the check when presented for collection, and one who issues the check knowing that he has no funds to cover the check is just as guilty of making false representation as one who actually makes such representations expressly, either orally or in writing.

*In re Stacey,* 105 B.R. 672, 675 (Bankr. S.D.Ala.1989).

This court, however, believes this line of cases to be too rigid, and therefore adopts a more flexible approach to § 523(a)(2)(A) nondischargeability.

First, the United States Supreme Court in *Williams v. United States* held that "a check is not a factual assertion at all ...". *Williams v. United States,* 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982). A bank therefore "serve[s] only to direct the drawee bank to pay the face amount to the bearer, while committing [drawer] to make good the obligation if the banks dishonor[ ] the drafts." *Id.* A person who issues a check therefore makes no representations as to the state of the account upon which the check is written. *Id.* at 284–85, 102 S.Ct. at 3091–92.

The Supreme Court, in making its decision in *Williams,* looked to § 3–104 of the Uniform Commercial Code ("UCC"). *Williams,* at 284, 102 S.Ct. at 3091. The Commonwealth of Pennsylvania has adopted the UCC, including § 3–104. The Pennsylvania Commercial Code states that "a check contain[s] an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or

power given by the maker or drawer ...". 13 Pa.C.S.A. § 3104(a)(2). Pennsylvania law thus supports the position that a check makes no representation as to the balance of the drawer's checking account; a check is merely an order to pay a particular sum of monies.

Finally, one can imagine a scenario in which a *per se* rule of fraud would work a serious injustice. For example, drawer writes a check to payee knowing that his bank account presently lacks funds sufficient to cover the amount of the check. However, drawer knows that later on in the day, he will receive a paycheck which he will promptly deposit in the checking account. Drawer's account will then contain funds sufficient to cover the check written earlier that day. The paycheck deposited in drawer's account will clear quickly enough so that the check written by drawer can be honored. Drawer's paycheck, through no fault of drawer, does not clear due to insufficient funds. The check written by drawer, because of the lack of funds of a third party, likewise does not clear. Under the *per se* rule of fraud set forth by *In re Stacey*, drawer would be guilty of fraud because he wrote a check knowing his account lacked sufficient funds at the time. Such a rule disregards the fact that drawer reasonably believed that his account would have sufficient funds to cover the check later that day.

■ This court therefore adopts a more flexible approach in determining whether a debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Under this approach, "[t]he issuance of a check upon insufficient funds is not, standing alone, a fraudulent misrepresentation sufficient to sustain a nondischargeable claim under § 523(a)(2)(A)". *In re Ritzer*, 105 B.R. 424, 427–28 (Bankr.S.D.Ohio 1989). *See also, In re Burgstaler*, 58 B.R. 508 (Bankr. D.Minn.1986).

In order to find a debt nondischargeable under 11 U.S.C. § 523(a)(2)(A), a creditor must prove that:

(1) the debtor obtained money, property or services through a material misrepresentation;

(2) the debtor, at the time, knew the representation was false or made with gross recklessness as to the truth;

(3) the debtor intended to deceive the creditor;

(4) the creditor reasonably relied on the false representation; and

(5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representation.

*In re Ritzer*, 105 B.R. at 417; *In re Stacey*, 105 B.R. at 672; *In re Yagow*, 61 B.R. 109 (Bankr.D.N.D.1986).

The creditor need not prove each of the above elements individually. *In re Yagow*, 61 B.R. at 111. "[A] person's intent is often incapable of direct proof and may be inferred from the totality of circumstances surrounding a transaction." *Id.* To show such intent to deceive from the totality of the circumstances, a creditor must show "actual, as opposed to constructive, intent". *In re Ritzer*, 105 B.R. at 428. Actual intent "must be proved by clear and convincing evidence". *In re Yagow*, 61 B.R. at 111.

■ Several factors go to determining whether the totality of the circumstances establish a debtor's actual intent to defraud. The *Ritzer* court looked at debtor's intent to make good on "NSF" checks; the fact that the debtor knew some of the checks he wrote would clear, depending on when they were presented to the bank; and the fact that debtor paid the creditor for as long as possible. *In re Ritzer*, 105 B.R. at 428–29. In the case at hand, there is no indication that debtor had any intent to make good on the check he wrote. There is no evidence or testimony that debtor ever attempted to issue another check to P & W, or make some other financing arrangement with P & W, such as a payment plan. Debtor also could not have reasonably thought that the check he issued to P & W would be honored depending on when it was presented. According to his answers to P & W's interrogatories, in the six (6) months prior to and after December 15, 1990, debtor at no time had funds in his checking account sufficient to cover a check for $20,664.00. Moreover, debtor's

1990 1040EZ Income Tax return shows that he earned less than $10,000.00 for all of 1990, a sum hardly sufficient to purchase a $21,000.00 automobile.

Counsel for debtor averred that debtor's employer, Thomas Akins, was to have deposited funds to cover the check to P & W. The funds were allegedly to have been deposited on Friday for availability on Monday. However, because the employer and debtor failed to appear for trial, there is no evidence or testimony to support defense counsel's averment.

■ Because issuing a check backed by insufficient funds is not *per se* fraud, the creditor, in addition to showing actual intent to deceive, must prove that the debtor made a representation that the check was good. *In re Ritzer*, 105 B.R. at 428.

C. Thomas Sawyer testified that debtor assured him that funds sufficient to cover the check to P & W for $20,664.00 had been deposited in debtor's account on Friday, and would be available to P & W when it presented the check to the bank on Monday. Debtor therefore made a representation that the check was good. Not only did debtor make such a representation, Sawyer reasonably relied on the representation that debtor's check was good. Based solely on debtor's assurances that the check for $20,664.00 was good, P & W delivered the automobile to debtor. Had Sawyer known the actual state of debtor's checking account, he would not have authorized the delivery. Undeniably, one could argue that P & W acted imprudently in allowing debtor to buy an expensive car with a personal check, considering that the bank could not be contacted for verification. However, in the totality of the situation P & W's actions were not so out of line with commercial practices as to be unreasonable. Debtor's assurance of sufficient funds was a misrepresentation, and concealment of a material fact constitutes intent to deceive. *In re Yagow*, at 113.

As a result of debtor's materially false representation, P & W suffered a loss totalling $5,708.00. Said debt is determined to be nondischargeable.