In re Paul C. SCHLICKMANN, Debtor,

FIRST SERVICE CORPORATION, Plaintiff,

v.

Paul C. SCHLICKMANN, Defendant.

Bankruptcy No. 4–80–0011–G.
Adv. No. 4–80–0060–G.

United States Bankruptcy Court,
D. Massachusetts.

Sept. 29, 1980.

Paul L. Wean, Natick, Mass., for debtor.

Irving Brodsky, Providence, R. I., for First Service Corp.

## MEMORANDUM AND ORDER

PAUL W. GLENNON, Bankruptcy Judge.

On May 12, 1980, the First Service Corporation filed a complaint to except a debt owed by Mr. Schlickmann from discharge pursuant to § 523(a)(2) of the Bankruptcy Code. Mr. Schlickmann filed a joint petition under Chapter 7 on February 27, 1980. In the debtor's schedules, he lists an unsecured loan obtained from the plaintiff for $3,165.21. The plaintiff avers that Mr. Schlickmann induced them to make the loan by furnishing a credit application that was materially false. A hearing was held on June 23, 1980 in Worcester, Massachusetts.

In cases involving nondischargeability due to fraud, the plaintiff has the burden of proving that the debt owed to them by the defendant was incurred by reason of the defendant's positive fraud, and thus should be excepted from discharge pursuant to the Bankruptcy Code, 11 U.S.C. § 523(a)(2). *In re Jones*, 3 B.R. 410, 412 (W.D.Va.1980); Cf. *Murphy v. Wheatley*, 360 F.2d 180 (5th Cir. 1966) (under § 17(a)(2) of the Bankruptcy Act).

The elements required to be found in the present case for the debt to be excepted from discharge because of the debtor's fraud are: (1) that a false representation was made by the debtor; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations, and his reliance was reasonably founded; and, (5) that the creditor sustained loss and damage as a result of the representations. *In re Houtman*, 568 F.2d 651, 655 (9th Cir. 1978).

Direct proof of fraudulent intent is rarely available. Therefore, intent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the lender. The representation coupled with his conduct is sufficient to permit the court to infer the requisite intent. *Matter of Clark*, 1 B.R. 614, 617 (M.D.Fla.1979).

The basic facts of this case as they appear from the record and as presented at trial are as follows:

On August 20, 1979, Mr. Schlickmann drove from his home in Southboro, Massachusetts to the office of the First Service Corporation in Providence, Rhode Island. He went to see if he could apply for a loan. He chose the plaintiff's institution because he was acquainted with Mr. David McGrath, the plaintiff's president. Mr. Schlickmann's daughter was a friend of Mr. McGrath's son.

Mr. Schlickmann met with Mr. McGrath to discuss the feasibility of a loan and Mr. McGrath directed him to Mr. Theodore Winston, the Consumer Credit Manager, who assisted Mr. Schlickmann in filling out the application papers. The appropriate forms were filled out by Mr. Winston who solicited the necessary information from the debtor.

The credit application listed both "Assets Owned" and "Outstanding Debts". The application reads that Mr. Schlickmann had total assets of $15,500. This figure was calculated by totaling the value of his automobile with "Personal Property". The application reflects that the automobile is subject to debt.

Under the "Outstanding Debts" category, the first line reflecting landlord or mortgage holder information is blank. The second line shows an outstanding debt of $5,000 for an Auto loan from Worcester County Savings. Line 3 shows a $1500 outstanding balance owed on a personal loan to Marlboro Finance. There is a last line which calls for a totaling of the debts, and under the subheading "Present Balance", $6,500 is listed. The remainder of the line is blank. There is no room provided for additional creditors but there is a proviso that separate sheets should be attached if necessary to include all creditors.

The application was signed by Mr. Schlickmann on August 20, 1979. Mr. Winston ran a credit check that same day. The check revealed that Mr. Schlickmann had additional debts outstanding to those listed on the application. (Exhibit 3). The credit check also listed two debts to Worcester County National Bank, totaling $1141.00, which is not the same debt listed to the Worcester County Savings on Mr. Schlickmann's credit application.

The witnesses for the plaintiff testified that a typical loan applicant is viewed in light of their current debt service to net income ratio. Testimony of normal procedure of the bank established that a ratio of 4 to 10, or 40%, is the initial rate of consideration. Below such percentage may qualify one for further consideration but above such a normal ratio would preclude one from obtaining a loan in the ordinary course. On the debtor's application, he listed his monthly payments as $450 and $98, which total $548.00. This figure is used as the monthly debt service figure in the ratio. In fact, this is the figure used by the plaintiff in calculating the debtor's debt-to-income ratio. (Exhibit 2). Under the section "Direct Credit Checks" on the Installment Loan Worksheet, (Exhibit 2), the listed loans to Mr. Schlickmann were checked and the terms were $149.97 and $108.46. This totals approximately $258.00, or $10.00 higher than the accepted figure given by Mr. Schlickmann and used by the Bank in their calculations.

On August 21, 1980, the loan to Mr. Schlickmann was approved by the Credit Committee. Two individuals initialed their approval on the Installment Loan Worksheet. One individual initialed the "Declined By" line and cited "poor thrift pattern, slow credit" as their reason for declining the loan. A bank check was issued on August 22, 1979 to Mr. Schlickmann.

The plaintiff in this case ask that the debt owed be declared non-dischargeable. They argue that they "reasonably relied upon the accuracy of the debtor's credit application . . . in making the said loan." (Complaint of Plaintiff–May 12, 1980). After a full hearing and a review of all the facts, I do not believe that the plaintiff has met its burden of proving positive fraud. *Jones*, supra. I am not convinced that the debtor intended to deceive the creditor. The very fact that it was the plaintiff who filled out the credit application, regardless that it was incomplete and not completely filled, makes the burden of presenting a picture of deceptive conduct difficult. It affects the argument that the creditor relied on the information when the facts are that the creditor was present and questioning the debtor while the creditor filled out the forms. Additionally, the plaintiff should have been put on notice when the credit check revealed outstanding loans in addition to those listed on the credit application. These outstanding debts

were all but ignored. The plaintiff seemingly made no effort to determine the affect of these loans on the debtor's current financial situation. The debts were not factored into the plaintiff's all important debt–to–income ratio. It is a well accepted principle that the failure to include outstanding obligations on a loan application renders the statement materially false,[1] but the question of reliance cannot be inferred when a credit check by the plaintiff reveals such additional outstanding loans. The plaintiff's ignoring of such additional obligations lends credence to the debtor's assertion that the loan was being given as a personal favor because of his pre–existing relationship with the plaintiff's president.

I find that the First Service Corporation has failed to meet its burden of proof and its reasonable reliance on defendant's credit application. Therefore, the relief requested by the plaintiffs to except the debt owed from dischargeability is DENIED, and Mr. Schlickmann is entitled to discharge this debt.

---

1. See: *Abbott v. Regents of University of California*, 516 F.2d 830 (9th Cir. 1975).