**In re John P. COKKINIAS, Debtor.**

**Daniel J. BARCH, Plaintiff,**

**v.**

**John P. COKKINIAS, Defendant.**

**Bankruptcy No. 4–81–00794–G.**
**Adv. No. 4–81–0415.**

United States Bankruptcy Court,
D. Massachusetts.

March 16, 1983.

As Amended March 25, 1983.

Abraham B. Feinstein, Michelman & Feinstein, Springfield, Mass., for plaintiff.

Manuel M. Farber, Cooley, Shrair, Alpert, Labovitz & Dambrov, Springfield, Mass., for defendant.

## MEMORANDUM AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

PAUL W. GLENNON, Bankruptcy Judge.

Before me is a complaint to determine the dischargeability of a debt filed by Daniel Barch. This action arises from a loan transaction entered into in July of 1981. In his answer, the defendant asserted a counterclaim seeking the assessment of attorney's fees and costs incurred in defending this action.

### FACTS

I find the facts to be as follows. The debtor, John P. Cokkinias ("Cokkinias") and the plaintiff, Daniel J. Barch ("Barch") met sometime in the middle of 1980. They had no business dealings with each other. They were purely casual friends, i.e., they socialized at the Y.M.C.A., played golf together, etc. Both men were knowledgeable businessmen; Cokkinias had been in the real estate business for forty years while Barch was the owner of Compudata, a data processing service.

On the evening of July 8, 1981, Cokkinias telephoned Barch, at home, and stated he had a serious problem he had to discuss with Barch. Barch replied he would be in his office shortly and Cokkinias should telephone him there. Soon thereafter, Cokkinias called Barch and stated he was in immediate need of money which, if loaned, could not be repaid for approximately six months. Without asking the reason for the demand, and without asking for any security in return, Barch replied that he would leave a $5,000 check with one of his employees which Cokkinias could pick up that same evening. Cokkinias picked up the check and cashed it the next day. The check was drawn on the account of Compudata, the company owned by Barch.[1]

About two weeks later, Barch called Cokkinias and stated that upon the advice of his accountant, Cokkinias would need to sign some type of papers in recognition of the loan. Barch's accountant was afraid that absent such papers, the Internal Revenue Service might deem the transaction a dividend with adverse tax consequences to Compudata. Cokkinias agreed to later meet Barch at the offices of Leonard Michelman ("Michelman"), Barch's attorney. Cokkinias arrived at Michelman's office before Barch. Michelman showed Cokkinias a document labelled "NOTE". The word "MORTGAGE" preceding "NOTE" was crossed out. Where the type of security pledged was to be typed in, the word "NONE" appeared. According to the terms of the "NOTE", $5,000 was payable on demand and due September 1, 1981, with interest at the rate of 15 percent per annum. At the bottom of the note, below the signature lines, the names John P. Cokkinias and Mary Gail B. Cokkinias (the debtor's wife) were typed in. The note was dated July 21, 1981. Neither the debtor, nor his wife, signed this document.

The next day, upon the request of Barch, Cokkinias picked up a second document. This document was dated July 1981. Only the name John P. Cokkinias appeared below the signature line. Again, no security was listed. Per the terms of this note, payments were to be made on the first day of every other month beginning September 1, 1981. The rate of interest due was not specified. Cokkinias did not sign this second note.

In September 1981, Cokkinias met Barch and stated he would sign an agreement to pay $200 per month until the balance (in-

---

1. However, this action was brought in the name of Barch, individually.

cluding interest) was paid. He had yet to make any payments in satisfaction of the loan. A document captioned "Sales Agreement", dated September 1, 1981, was signed by both parties. Under the terms of this agreement, Cokkinias was to begin making payments of $200 on October 1, 1981. Thereafter, $200 was due on the first of every month until the principal amount of $5,000, plus 15 percent annual interest were paid down. Cokkinias made only one payment. On October 5, 1981, Cokkinias filed his Chapter 7 petition.

## DISCUSSION

11 U.S.C. § 523(a) provides: [2]

A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—...

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition.

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive....

As neither party alleges that at the time of the transaction a writing existed upon which Barch could have relied, this action is to be construed, most properly, under subsection (2)(A). *Cf. In re Valley,* 21 B.R. 674 (Bkrtcy.D.Mass.1982). This Court has recently concluded that the requirements which must be met in order for a debt to be declared nondischargeable pursuant to § 523(a)(2)(A) are:

(1) a false representation by the debtor;

(2) known to be false at the time it was made;

(3) made with the intention and purpose of deceiving the creditor;

(4) which was reasonably relied upon by the creditor;

(5) which resulted in loss or damage to the creditor as a result of the false representation. *See In re Valley, supra,* at 679.

*See also In re Johnson,* 18 B.R. 555 (Bkrtcy. S.D.Md.1982) and *In re DeRosa,* 20 B.R. 307 (Bkrtcy.S.D.N.Y.1982). For a debt to be declared nondischargeable under this subsection, *each* of the five elements set forth above must be proven. For, it is well settled that the exceptions to discharge are to be strictly construed in favor of the debtor so as to afford the honest debtor the fresh start protection promised by the Bankruptcy Code. *See, e.g., In re Johnson, supra; In re Carothers,* 22 B.R. 114, 9 B.C.D. 680 (Bkrtcy.D.Minn.1982); *In re DeRosa, supra;* and *In re Vissers,* 21 B.R. 638 (Bkrtcy.E.D. Wis.1982).

In the instant action, the five requirements have not been satisfied. At the time of the loan transaction, the debtor did not knowingly make a false statement to Barch and therefore, there could be no statement upon which Barch relied. I recognize that even a misrepresentation of an intent to pay in the future may be sufficient grounds to satisfy, in part, § 523(a)(2)(A). However, it appears that on the evening of the loan transaction, Cokkinias did not misrepresent his intention to pay. Nor did he misrepresent his intention to provide security to Barch for the loan. That evening is the critical point in time at which the representation referred to in § 523(a)(2)(A) is to be examined. By his own admission, Barch testified the reason he requested the debtor to sign a docu-

**2.** The Court recognizes that § 523(a) of the Bankruptcy Code governs (the case and) this adversary proceeding although the creditor brought this complaint pursuant to § 17c of the Bankruptcy Act. The Bankruptcy Code be-

came effective on October 1, 1979 and applies to all cases commenced thereafter. As set forth above, this case was commenced on October 5, 1981.

ment evidencing the loan was to satisfy his accountant, and possibly the Internal Revenue Service. The fact that the debtor "said something about equity agreement, or something", (Hearing Transcript January 4, 1982 at 18) at the time the loan transaction was made, is insufficient in terms of satisfying § 523(a)(2)(A). The elements which must be shown to have existed, as set forth above, are not met without a showing of specific facts.

◼ The Court is not now passing on whether *subsequent* to the loan transaction the debtor may have made a false statement which caused § 523(a)(2)(A) to be operable. Such a determination is irrelevant. The law is clear on this point. "[I]f the property was obtained prior to the making of any false representation, subsequent misrepresentation will have no effect upon the discharge of the debt ... The plaintiff must prove that the claimed fraud existed at the *inception* of the debt and that [he] relied upon it." (citation omitted) (emphasis supplied). *In re Gennaro,* 12 B.R. 4 (Bkrtcy.W.D.Pa.1981). *See also In re Vissers, supra,* at 640 ("[t]he fraud necessary to make a debt nondischargeable must exist at the inception of the debt"), *In re DeRosa, supra,* at 312 ("the requisite fraudulent intent must be shown to have existed at the time the debtor obtained the money, property, services or extension, renewal or refinance of credit"); *In re Jenes,* 18 B.R. 405, 407–408 (Bkrtcy.S.D.Fla.1981) ("[i]f property is obtained prior to the making of any false representation, subsequent representations will not prevent discharge of the debt"); *In re Geyen,* 11 B.R. 70, 72 (Bkrtcy. W.D.La.1981); ("subsequent misrepresentations will have no effect upon the discharge of the debt"); and *In re Shepherd,* 13 B.R. 367, 372 (Bkrtcy.S.D.Ohio 1981) ("§ 523(a)(2)(A) requires that the false representation be the reason for the creditor's extension of credit").

The creditor, as an experienced businessman, was not without the knowledge or

ability to secure protection for himself at the time the loan was made. Admittedly, it is not often that a businessman would lend $5,000 to a casual friend without receiving any type of security in return for the loan. However, it is not for the Court to intervene on behalf of Barch and now offer him an escape from his own mistake. "[A p]laintiff cannot conduct business without due care and then maintain that as a result of deception it extended credit". *In re Shepherd, supra,* at 372. The discharge provided by 11 U.S.C. § 727 is to be granted to an honest debtor filing for protection under Chapter 7 unless the debtor is guilty of the conduct set forth in the § 523 exceptions.

◼ As to the debtor's counterclaim for attorney's fees and costs (in the amount of $750), § 523(d) provides:

> If a creditor requests a determination of dischargeability of a *consumer debt* under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, unless such granting of judgment would be clearly inequitable. (emphasis supplied)[3]

"The purpose of the provision is to discourage creditors from initiating ... exception to discharge actions in the hopes of obtaining a settlement from an honest debtor anxious to save attorney's fees. Such practices impair the debtor's fresh start." S.Rep. 95–989 95th Cong., 2d Sess. 80 (1978). *See also* H.R.Rep. No. 95–595 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5866. At the trial, neither debtor's counsel nor Barch's counsel introduced any evidence as to whether the debt was a consumer debt. As I recently stated in *In re Finnie,* 21 B.R. 368, 371 (Bkrtcy.D.Mass.1982),

> [I]f the debtor has properly requested an award under § 523(d) in his answer to

---

**3.** 11 U.S.C. § 101(7) defines a consumer debt as a "debt incurred by an individual primarily

for a personal family, or household purpose".

the complaint, he shall be permitted, within 10 days of a decision thereon, to file a motion for the assessment of such costs and attorney's fees, with accompanying affidavits, which motion shall be granted unless there is interposed a response to the motion by the complaining creditor within five days of the motion. If such a response is filed, the court would then set the matter down for an evidentiary hearing.

Therefore, in accordance with the above:

1. Judgment shall enter in favor of the debtor; the loan of July 8, 1981 is dischargeable;

2. Counsel for the debtor is hereby given ten (10) days within which to file a motion for assessment of costs and attorney's fees with accompanying affidavits. If the Court does not receive a response from the creditor within five (5) days thereafter, the debtor's motion for costs and attorney's fees shall be reviewed and allowed in a reasonable amount.

SO ORDERED.