In re Albert Michael LEGER d/b/a Al Leger Roofing, Siding and Masonry and Carleen Yvonne Leger a/k/a Carleen Yvonne David, Debtors.

EASTERN FOOD SERVICE, INC., d/b/a Stewart Sandwich Service, Plaintiff,

v.

Albert Michael LEGER d/b/a Al Leger Roofing, Siding and Masonry, Defendant.

Bankruptcy No. 4–81–00976–G.
Adv. No. 4–82–0034.

United States Bankruptcy Court, D. Massachusetts.

Nov. 8, 1983.

David M. Felper, Springfield, Mass., for plaintiff.

Pamela Croke, Hadley, Mass., for defendant.

## MEMORANDUM AND ORDER

PAUL W. GLENNON, Bankruptcy Judge.

This matter comes before the Court on the complaint of Eastern Food Service, Inc., d/b/a Stewart Sandwich Service ("Eastern Food") to have a debt in the amount of $21,922.13, based on a state court judgment, declared nondischargeable under 11 U.S.C. § 523(a)(2)(A).

Based on the record established at trial, I make the following findings of fact:

The defendant Albert Michael Leger did business as Al Leger Roofing, Siding, and Masonry ("debtor"). Eastern Food and the debtor entered into two written contracts, both prepared by the debtor. By the terms of the first contract, dated November 26, 1980, the debtor was to repair plaintiff's roof at the premises designated as 23 New Bridge Street, West Springfield, Massachusetts. Pursuant to this contract, the debtor was to "strip and remove" the area which needed repair using a three-ply system with tar paper and hot tar, and the plaintiff was to pay the debtor the sum of $1,000.00. The first $300 was to be paid at the start of the job and the balance of $700 was due upon completion. The debtor represented to the plaintiff that his repairs would be performed in a workmanlike manner according to standard practice, and would be guaranteed for a period of 7 years. The plaintiff paid the debtor $300 to start the job and later, believing said repairs to be completed in accordance with the terms of the contract, paid the debtor the $700 balance.

Thereafter, plaintiff had additional leaks in the roof. Eastern Food contacted the debtor and entered into a second contract on February 9, 1981, to re-roof the entire roof at the same premises. Pursuant to this second contract, the debtor was to apply a new roof to the entire roof with 90 pound roll roofing. This would involve a three-ply system which would include two layers of 15 pound tar paper and the 90 pound roll roofing. All flashing was to be replaced. In consideration, the plaintiff was to pay the debtor the sum of $3,000.00. The first $1000 was to be paid "upon delivery of material", $1500 was to be paid upon completion, and $500 would be held until after the first rain. Defendant represented in the contract that his work would be performed in a workmanlike manner according to standard practice, and would be guaranteed for a period of 15 years. The standard practice for re-roofing the type of roof like that at the subject premises is to clear all the gravel off and put down three layers of paper with tar and gravel and new flash.

There was no evidence regarding the work that the debtor actually performed, or did not perform, pursuant to the first contract. As for the second contract, the debtor did not apply a three-ply system to the roof, but instead applied a single layer of paper, nailed down over some gravel. The roof had not been scraped clean prior to the application of the paper. The cost for labor and materials in applying a single layer of paper rather than a three-ply system is less than $3,000.00. The debtor failed to perform the re-roofing as stated in the second contract, but represented to the plaintiff that the contract had been completed. The debtor obtained the sum of $2,000.00 from the plaintiff after telling the plaintiff that he had completed the second of the two contracts by applying a three-ply system to the roof.

Shortly after the debtor told the plaintiff that the new roof was completed, portions of the roof blew off the building and leaks developed. The plaintiff and its attorney made several requests of the debtor to correct the problem and honor the guarantees stated in the contracts. The debtor returned to the subject premises on two or three occasions but whatever repairs he

made were inadequate to correct the problem. The interior of the building suffered water damage in the amount of $3000. It was necessary for the plaintiff to hire Joseph Racco, Inc. to repair the roof at a cost to the plaintiff of $5,550.00. Joseph Racco, Inc. was required to scrape the roof clean and re-do the entire roofing job.

Plaintiff filed suit against the defendant in the Springfield District Court for breach of contract (Count I) and violation of Massachusetts General Laws, Chapter 93A, the so-called Consumer Protection Act (Count II). The complaint alleged that in March of 1981, subsequent to the debtor's work under the second contract, there was water damage to the structure and contents of the premises in the amount of $5,000. Additionally, it was alleged that it was necessary to hire Joseph Racco, Inc. to install a new roof at a cost of $5,550. The Springfield District Court entered a default judgment on the issue of liability against the defendant and on September 28, 1981 assessed damages in the sum of $10,550 on Count I and, having found a willful knowing violation of Chapter 93A, made an award of double damages ($21,000) plus attorney's fee of $500 on Count II. Additionally, the judgment included interest in the amount of $277.48 and costs in the amount of $43.65 for a total judgment of $21,921.13 on Count II. Recovery was limited to the total of Count II.

At some point prior to the date of the second contract, the residence of the debtor, his wife, and their four children was destroyed by fire. The insurance proceeds were not sufficient to replace the loss and the debtor was experiencing financial difficulty. The defendant filed for bankruptcy on December 11, 1981.

## DISCUSSION

 The plaintiff contends that the Springfield District Court's decision and judgment predicated on Chapter 93A liability is determinative of the debtor's fraudulent conduct and therefore is controlling as to nondischargeability under 11 U.S.C. § 523(a)(2)(A). However, in *Commonwealth v. Hale,* 618 F.2d 143 (1st Cir.1980), the Court of Appeals upheld the bankruptcy and district courts' decisions that a default judgment based upon the debtor's violations of Chapter 93A does not provide the basis for application of the doctrine of collateral estoppel to determine nondischargeability of a debt in bankruptcy. The court stated that the state court record lacked any express findings on those issues relevant to nondischargeability, and furthermore, "the minimum misconduct required to make out a Chapter 93A claim falls short of that needed to support a ... nondischargeability determination." *Id.* at 146. The principle of collateral estoppel does not operate to render a Chapter 93A judgment nondischargeable because it would be possible under the same set of facts to find a violation of Chapter 93A for misconduct which lacks the elements of nondischargeability. *In re Toscano,* 23 B.R. 736 (Bkrtcy.D.Mass.1982). In a Chapter 93A action, it is unnecessary for a plaintiff to establish that the defendant knew his allegedly deceptive representations were false or to prove his actual reliance upon the defendant's representations. *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 322 N.E.2d 768 (1975). To prevent discharge for fraud under § 523(a)(2)(A),[1] however, the plaintiff must prove actual fraud and not merely fraud implied in law. *In re Montbleau,* 13 B.R. 49 (Bkrtcy.D.Mass.1981). The elements of actual fraud are:

(1) a false representation by the debtor;

(2) known to be false at the time it was made;

---

1. 11 U.S.C. § 523(a)(2)(A) provides:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—...

(2) for obtaining, money, property, services, or an extension, renewal or refinance of credit by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...."

(3) made with the intention and purpose of deceiving the creditor;

(4) which was reasonably relied on by the creditor; and

(5) which resulted in loss or damage to the creditor as the proximate result of the false representation.

*In re Cokkinias,* 28 B.R. 304, 306 (Bkrtcy.D. Mass.1983). *See also In re Valley,* 21 B.R. 674 (Bkrtcy.D.Mass.1982); *In re Johnson,* 18 B.R. 555 (Bkrtcy.N.D.Md.1982); and *In re DeRosa,* 20 B.R. 307 (Bkrtcy.S.D.N.Y.1982).

■ For a debt to be declared nondischargeable under this subsection, each of the five elements set forth above must be proven. The exceptions to discharge are to be strictly construed in favor of the debtor so as to afford the honest debtor the fresh start protection promised by the Bankruptcy Code. *In re Cokkinias, supra. See also In re Johnson, supra; In re Carothers,* 22 B.R. 114 (Bankr.D.Minn.1982); *In re DeRosa, supra;* and *In re Vissers,* 21 B.R. 638 (Bkrtcy.E.D.Wisc.1982). The plaintiff bears the burden of proving each element by clear and convincing evidence. *In re Vissers, supra,* at 639 and *In re Tomeo,* 1 B.R. 673 (Bkrtcy.E.D.Pa.1979).

■ Since direct proof of intent (i.e., debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred. *In re Hosking,* 19 B.R. 891, 895 (Bkrtcy.W.D.Wisc. 1982). As stated in *In re Schlickmann,* 6 B.R. 281, 282 (Bkrtcy.D.Mass.1980): "Direct proof of fraudulent intent is rarely available. Therefore intent to deceive may be inferred when the totality of the circumstances presents a picture of the deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the lender. The representation coupled with his conduct is sufficient to permit the court to infer the requisite intent." The debtor cannot overcome such an inference with unsupported assertions of honest intent. *Matter of Rickey,* 8 B.R. 860, 863 (Bkrtcy.M.D.Fla. 1981) and *In re Simpson,* 29 B.R. 202, 211–212 (Bkrtcy.N.D.Iowa 1983).

■ The debt which the creditor seeks to have declared nondischargeable, the $21,-921.13 state court judgment, represents the sum of several transactions and events. Each must be examined separately in considering whether the elements of a nondischargeable debt under § 523(a)(2)(A) have been satisfied. The first transaction was the November 26, 1980 contract for the repair of the roof at a contract price of $1000.00. There was no evidence that these repairs were not satisfactorily made. The evidence showed that subsequent to the debtor's performing work and accepting $1000 in payment, other leaks developed and the debtor was retained to re-roof the entire roof. Evidence that the second contract was not performed in the manner the debtor had represented it had been performed is insufficient to support a conclusion that the debtor had made a false representation in the course of taking payment on the first contract.

■ The second contract is a different matter. The plaintiff has shown by clear and convincing evidence that at the time the debtor represented that the re-roofing had been completed, the debtor knew that these representations were false and the debtor made the representations with the intent to deceive the plaintiff. The evidence is that the defendant applied a single layer of paper, over gravel, nailed down to the roof, and then represented to the plaintiff that he had applied a three-ply system to the roof and thus should be paid the $2,000 balance of the contract price. The debtor obtained the $2,000 balance of the contract price on the false representation that the work required to be performed had in fact been performed. As to the $2,000 payment, the plaintiff has established each of the five elements of fraud required to render a debt nondischargeable under § 523(a)(2)(A). The fact that the debtor intended, according to his testimony, to finish the job when he had funds to do so does not change the fact that he knew at the time he took the $2000 payment that he had not performed the work as represented, he intended to induce the plaintiff to make the

payment, and the plaintiff relied on the representation and sustained a loss as the proximate result of the representation having been made.

As for the $1000 the debtor was paid at the commencement of the second contract, there was no direct evidence, and certainly no evidence that would satisfy the clear and convincing standard, that at the time the debtor obtained the $1000 payment the alleged fraud existed. "[T]he requisite fraudulent intent must be shown to have existed at the time the debtor obtained the money ..." *In re DeRosa, supra,* at 312. "[S]ubsequent misrepresentations will have no effect upon the discharge of the debt." *In re Geyen,* 11 B.R. 70, 72 (Bkrtcy.W.D.La,1981). *See generally In re Cokkinias, supra,* at 307. While intent to deceive may be inferred from the totality of the circumstances, there still must be evidence of the circumstances which the plaintiff believes present a picture of deceptive conduct. Here we know only that the debtor has a spouse and four children, that his home was destroyed by fire before the contract was entered into, that the insurance proceeds were not sufficient to replace the loss, and that the debtor did commence performance. The evidence would not support a finding, that the debtor entered into the contract without any present intent to perform. *See In re Ballard,* 26 B.R. 981, 985 (Bkrtcy.D.Conn. 1983). Therefore, I conclude that only $2,000 of the $4,000 paid to the debtor by the plaintiff is debt which is nondischargeable under § 523(a)(2)(A).

I next consider the portion of the debt that relates to the water damage and the portion that relates to money expended for another roofing contractor to do the job, bearing in mind that the debtor should not be "penalized for more than simply the consequences of his fraud". *Household Finance Corp. v. Danns,* 558 F.2d 114, 116 (2nd Cir.1977) (decided under § 17(a)(2) of the Bankruptcy Act of 1898, the predecessor of § 523(a)(2) of the Bankruptcy Code.)[2]

The creditor's evidence that its premises had suffered water damage in the amount of $3000 was unchallenged. The plaintiff's loss was a proximate result of the misrepresentation made by the debtor. *See In re Cicero,* 28 B.R. 480 (Bkrtcy.E.D.Wisc. 1983). If the debtor had told the plaintiff that he could not, or would not, complete the roofing job and that he had only applied one layer of paper, the plaintiff promptly could have obtained another contractor to complete the job and thus could have prevented water damage to the building. The debtor, however, led the plaintiff to believe the roof was repaired. I must conclude that the debtor, as an experienced roofer, knew that water damage would result from his failure to complete the roofing job and from his assurances to the plaintiff that the roof was repaired. Therefore, I find the $3000 in water damages to be a direct consequence of the fraud and nondischargeable under 11 U.S.C. § 523(a)(2)(A).

The $5550 which the plaintiff had to pay to have another contractor perform the roofing job is a different matter. These damages do not flow from the fraudulent conduct. They result from the debtor's breach of contract. *See In re Haynes,* 19 B.R. 849, 852 (Bkrtcy.E.D.Mich.1982) and *In re Clayton,* 9 B.R. 5, 7 (Bkrtcy.S.D.Fla. 1980). If the debtor had refused to take the $2000 payment on the second contract and had told the plaintiff that only a layer of paper had been applied, it still would have cost the plaintiff the additional $5550 to have the second contractor do the roofing job.

Wherefore, in accordance with the foregoing memorandum, it is ORDERED and ADJUDGED that a debt owed to the plaintiff in the amount of $5000 be and is nondischargeable in bankruptcy.

---

**2.** Cases construing § 17a(2) of the Bankruptcy Act are applicable to dischargeability issues presented under § 523(a)(2) of the Bankruptcy Code. *In re Miller,* 5 B.R. 424, 427 (Bkrtcy.W. D.La.1980).