In re James Earl SCOGGINS, Debtor.

Alton L. LUTTRELL & Irene R. Luttrell, Plaintiffs,

v.

James Earl SCOGGINS, Defendant.

Bankruptcy No. 84–00045.
Adv. No. 84–0540.

United States Bankruptcy Court,
N.D. Alabama, S.D.

May 1, 1985.

Jeffrey W. Bennitt, Birmingham, Ala., for plaintiffs.

John C. Rockett, Birmingham, Ala., for debtor.

M. Charles Sterne, interim trustee.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Bankruptcy Judge.

The cause came before the Court on plaintiffs' Complaint To Determine Dischargeability of Debt pursuant to 11 U.S.C. Section 523(a)(2) (1978). Plaintiffs were granted relief from automatic stay to proceed in State Court to determine liability, *see In re Merrill,* 594 F.2d 1064 (5th Cir. 1979); the only issue before this Court is whether the indebtedness which is the subject of this dispute is non-dischargeable under 11 U.S.C. Section 523(a)(2) (1978). This memorandum shall constitute the findings of fact and conclusions of law required under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FINDINGS OF FACT

The Court notes at the outset that the debtor failed to attend the trial of this matter which was held in the Bankruptcy Courtroom # 2 in Birmingham, Alabama on January 23, 1985 at 1:30 p.m., although notice of the trial was sent. John C. Rockett, Esquire was present at the trial to cross-examine plaintiffs' witnesses and otherwise represent the debtor; but plaintiffs' evidence was uncontroverted.

On June 9, 1983 a complaint was filed with the Jefferson County Health Department in which one of Mr. Scoggins neighbors complained about the foul odor caused by a leaking sewer pipe in the Scoggins' yard. Mr. Rolls Coston, an Inspector with the Jefferson County Health Department, was sent to the Scoggins' residence at 5136 Rick Drive, Pinson, Alabama to investigate the complaint. Mr. Coston testified that no one was home when he went to inspect the Scoggins' property. Mr. Coston found that sewage was, in fact, leaking from the sewer pipes of the house into the yard and that the house was up for sale.

Mr. Newton, also from the Health Department, talked with Mr. Scoggins and advised him about the availability of repair information. On June 28, 1983 a repair permit was issued; such a permit is required prior to any work being done on sewer lines. When Mr. Coston inspected the Scoggins' property again in September, 1983, he found no signs of repair. He did not find standing sewage, but he did notice that the ground was "mushy". Mr. Coston testified that it was possible that the repairs could have been done between June 28, 1983 and September, 1983; but that these signs of sewer problems would abate if the toilet facilities in the house were not used.

On November 30, 1983, Mr. Coston met with Mr. Scoggins at his home. Mr. Coston found that the yard was dry, but he observed no sign of repair work. On cross-examination Mr. Coston testified that he might have told Mr. Scoggins that there was no problem with the sewer at this November 30, 1983 meeting.

The record also shows that some repair work was done on the sewer lines on the Scoggins property in 1981. The repair permit for that work was signed by a sanitarian and bore a notation to the effect that materials and workmanship were approved

but that the installation did not meet minimum Health Department standards. The repair permit which was issued on June 28, 1983 bore no notation which indicated that the work had, in fact, been done.

Based upon all of these facts and upon the fact that the Luttrells experienced sewage problems, the Court finds that Mr. Scoggins never had the sewer problem repaired but that the annoying symptoms of the problem were abated by not using the toilet facilities in the house.

On September 29, 1983, Mr. and Mrs. Alton Luttrell entered into a contract to purchase Mr. Scoggins house. Mr. Luttrell testified that he talked with Mr. Scoggins on December 22, 1983, the day the sale was closed. Prior to the closing, the Luttrells inspected the house two times. Mr. Luttrell testified that the ground appeared dry but also that the grass was nearly three feet tall. Mr. Luttrell stated that Mr. Scoggins told him that there were no problems with the sewer system. Mr. Luttrell was not aware of the Health Department Inspection, and he purchased the house based upon Mr. Scoggins representations.

As soon as the sale was closed, the Luttrells began experiencing problems with their new home. The day of closing the water heater broke, and the water damaged the carpet in the basement. One month later there was sewage drainage at the side of the house; and within two weeks sewage was coming out in the back yard. The sewage ran into the yard of a neighbor, Mr. Dison, who filed a complaint with the Health Department. The Luttrells have repaired the sewer line, but because liability and the amount of their claim will be determined in State Court, no evidence on the damages issue was adduced at trial.

## CONCLUSIONS OF LAW

Section 523(a)(2)(A) of the Bankruptcy Code provides:

**Section 523   Exceptions to discharge.**
(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representations, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. Section 523(a)(2)(A) (1978). Courts have generally recognized that the establishment of the following elements is required to except a debt from discharge under Section 523(a)(2)(A):

(1) that the debtor made the false representations;

(2) that at the time made, debtor knew they were false;

(3) that the representations were made with the intention and purpose of deceiving the creditor;

(4) that the creditor relief on such representations; and

(5) that the creditor sustained the alleged loss and damage as a proximate result of the representations having been made.

*See e.g., In re Miller,* 5 B.R. 424, 428 (Bktcy.W.D.La.1980), *Matter of Cicero,* 28 B.R. 480, 482 (Bktcy.E.D.Wis.1983). Courts have narrowly construed these exceptions to discharge against the creditor and in favor of the bankrupt. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Matter of Cross,* 666 F.2d 873, 879–80 (5th Cir.1982) (Unit B). In the *Cross* case, Unit B of the Fifth Circuit Court of Appeals stated through Justice Anderson:

The exceptions to discharge were designed to prevent the bankrupt from avoiding through bankruptcy the consequences of certain wrongful acts by providing protection to a certain preferred class of creditors. The exceptions to discharge were not intended and must not be allowed to swallow the general rule favoring discharge.

*Cross,* 666 F.2d at 880. Accordingly, the burden of proof lies with the creditor to

demonstrate that the particular debt falls within one of the statutory exceptions. *Id.*

■ To be excepted from discharge under Section 523(a)(2)(A), the indebtedness must have been incurred through actual fraud or misrepresentations and not merely fraud implied in law. *See In re Leger,* 34 B.R. 873, 876 (Bkrtcy.D.Mass.1983); *Matter of Cicero,* 28 B.R. 480, 484 (Bkrtcy.E.D.Wis. 1983); *In re Jenes,* 18 B.R. 405, 407 (Bkrtcy. S.D.Fla.1981). Because the Court cannot "probe into the inner processes of the minds of defendants in order to ascertain their intent", *Cicero,* 28 B.R. at 484, the Court must determine the presence of a fraudulent intent in light of the "totality of the circumstances." *See Id.; Leger,* 34 B.R. at 877; *In re Schlickmann,* 6 B.R. 281, 282 (Bkrtcy.D.Mass.1980). As Judge Clive W. Bare stated in *In re Holcombe,* 23 B.R. 590 (Bkrtcy.E.D.Tenn.1982):

> Although fraud is never presumed and it is settled doctrine that the term "fraud" in the acts of Congress defining a debt excepted from discharge means "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality," *Neal v. Clark,* 95 U.S.704, 709, 24 L.Ed. 586 (1878) fraud may be implied "[I]f the totality of the circumstances presents a picture of deceptive conduct" by the debtor which indicates that he intended to cheat and deceive. *See Matter of Clark,* 1 B.R. 614 (Bkrtcy.M.D.Fla. 1979).
>
> . . . .
>
> The cases are legion which point out that the purpose of bankruptcy legislation is to relieve the honest debtor from financial difficulties—not to provide a shield for the dishonest.

*Id.* at 592–93.

## APPLICATION OF LAW TO FACTS

### 1. *False Representations*

■ The uncontroverted testimony of Mr. Luttrell clearly establishes that Mr. Scoggins represented to him that there were no problems with the sewer system of the house. The record clearly shows that at the time Mr. Scoggins sold his house to the Luttrells a sewage problem existed; Mr. Scoggins' representations to the contrary was, therefore, false.

### 2. *Known To Be False*

Mr. Scoggins obviously knew whether he had repaired the sewer line. Because the Court has found that Mr. Scoggins did not repair the sewer line, the debtor must have known at the closing that his representation that there were no sewer problems was false. *Cf. Birmingham Trust Nat'l Bank v. Case,* 755 F.2d 1474 (11th Cir.1985) (reckless disregard for truth sufficient).

### 3. *Intent to Deceive*

As was stated in *Matter of Cicero,* 28 B.R. at 480–484 (Bkrtcy.E.D.Wis.1983):

> It is of course extremely difficult for the Court to probe into the inner processes of the minds of the defendants in order to ascertain their intent. However, courts may infer such intent from the totality of the circumstances.

*Id.; see also In re Leger,* 34 B.R. 873, 877 (Bkrtcy.D.Mass.1983); *In re Schlickmann,* 6 B.R. 281, 282 (Bkrtcy.D.Mass.1980). Based upon the "totality of the circumstances", the Court concludes that Mr. Scoggins' false representation that there were no sewer problems was made with the actual intent to deceive and induce the Luttrells into purchasing the house.

### 4. *Reasonable Reliance By Creditor*

The Court concludes that the Luttrells reasonably relied upon Mr. Scoggins' representation that there were no sewer problems. The record indicates that the Luttrells inspected the house and lot twice before closing. Because the sewer problem took about a month of normal toilet use to manifest itself, the Court concludes that the Luttrells acted reasonably in relying upon Mr. Scoggins' representation. The Court finds further support for its conclusion from the fact that Mr. Scoggins arguably concealed the sewage problem by not using the toilet facilities in the house and by letting the grass grow to a height of nearly three feet.

*5. Damages*

The parties have chosen to litigate the issues of liability and amount in State Court. Therefore, for the purposes of determining whether the elements of the exception to dischargeability have been met, the Court will assume that plaintiffs will be able to establish damages in the State Court action.

## CONCLUSION

Plaintiffs having sustained their burden of proof with respect to damages resulting from Mr. Scoggins' misrepresentation that there were no sewer problems with his house, any damages for such representation which plaintiffs may be awarded in the State Court action are due to be excepted from discharge pursuant to 11 U.S.C. Section 523(a)(2)(A) (1978). The Court also concludes, however, that plaintiffs have failed to sustain their burden of proof with respect to water damage caused by the broken water heater. Any sums awarded as damages for such water damage are due to be discharged pursuant to 11 U.S.C. Section 727 (1978). A separate order will be entered consistent with this opinion.