**In re Marvin Ray SELF, Debtor.**

**Dr. S.L. SETHI, Plaintiff,**

**v.**

**Marvin Ray SELF, Defendant.**

**Bankruptcy No. S84–10070.**
**Adv. No. 84–1092.**

United States Bankruptcy Court,
N.D. Mississippi.

June 3, 1985.

George L. Dorrill, Thornton, Guyton, Dorrill and Pettit, Kosciusko, Miss., for Marvin Ray Self.

Nina S. Tollison, Patterson, Tollison, Alexander and Powers, Oxford, Miss., for Dr. S.L. Sethi.

OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

Came on for consideration the complaint to deny dischargeability of a debt filed by the plaintiff, Dr. S.L. Sethi; answer filed by the defendant, Marvin Ray Self; all parties being represented by their respective attorneys of record; on proof before the Court; and the Court having heard and considered same, finds as follows, to-wit:

**I.**

This Court has jurisdiction of the subject matter and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

**II.**

In his bankruptcy schedules, the defendant-debtor, Marvin Ray Self, has listed the following debts as being owed to the plaintiff, Dr. S.L. Sethi:

A. Cost to complete projects:

| | |
|---|---|
| Tupelo Pizza Inn | $26,000.00 |
| Ridgeland New Orleans Fried Chicken | 21,000.00 |
| Meridian New Orleans Fried Chicken | 30,000.00 |
| Columbus Remodeling New Orleans Fried Chicken | 5,000.00 |
| Total | $82,000.00 |

B. Unpaid materialmen, suppliers, etc. (no labor)

| | |
|---|---|
| Total | $164,983.65 |

**III.**

The complaint alleging that the debts owed to the plaintiff by the defendant are non-dischargeable sets forth three statutory subsections supporting the relief sought, to-wit:

A. 11 U.S.C. § 523(a)(2)(A) which provides, inter alia, that the debt of an individual debtor is not discharged if it was for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

B. 11 U.S.C. § 523(a)(4) which provides, inter alia, that the debt of an individual debtor is not discharged if it was obtained for fraud or defalcation while acting in a fiduciary capacity.

C. 11 U.S.C. § 523(a)(6) which provides, inter alia, that the debt of an individual debtor is not discharged if it was obtained as a result of the willful and malicious

injury by the debtor to another entity or to the property of another entity.

## IV.

The plaintiff in this case is engaged in the business of constructing and leasing fast food restaurants. Since 1977, continuing through January 20, 1984, the plaintiff utilized the services of the defendant, a general contractor, for the construction of the restaurant buildings and appurtenant areas. A separate written contract was usually executed between the plaintiff and the defendant applicable to each construction project setting forth the contract price, the time frame for the construction, and the methodology of payment, i.e., an amount to be paid after the pouring and acceptance of the slab; an amount to be paid upon the acceptance of the "blacking-in"; and the balance to be paid on a weekly basis supported by invoices and statements for materials, labor, and supplies. Without serious contradiction, a close business relationship developed between the plaintiff and the defendant to the extent that the defendant worked exclusively for the plaintiff for almost seven years. Over the last several years, the plaintiff would normally issue his checks payable to the defendant based on only the verbal representation of the defendant that certain percentages of the projects were completed.

As to the three projects and the remodeling job set forth hereinabove in the defendant's schedules, *Dr. Sethi* provided the following testimony:

A. Tupelo Pizza Inn: The total contract price was $94,000.00; Dr. Sethi was told by the defendant that the project was 60% completed (a value of $56,400.00), when the project was actually only 15% completed (a value of $14,100.00). On this project, Dr. Sethi paid the defendant $60,000.00, while the cost to complete following default by the defendant was the sum of $70,000.00. The difference between the actual cost and the contract price was therefore the sum of $36,000.00. There were unpaid materialmen on this project whose claims total the sum of $19,984.40.

B. Ridgeland New Orleans Fried Chicken: The total contract price was $94,000.00; Dr. Sethi was told by the defendant that the project was 70% completed (a value of $65,800.00), when the project was actually only 30% completed (a value of $28,200.00). On this project, Dr. Sethi paid the defendant $55,000.00, while the cost to complete following default by the defendant was the sum of $65,640.00. The difference between the actual cost and the contract price was therefore the sum of $26,640.00. There were unpaid materialmen on this project whose claims total the sum of $6,440.42.

C. Meridian New Orleans Fried Chicken: The total contract price was $110,000.00; Dr. Sethi was told by the defendant that the project was 90% completed (a value of $99,000.00), when the project was actually only 75% completed (a value of $82,500.00). On this project, Dr. Sethi paid the defendant $90,000.00, while the cost to complete following default by the defendant was the sum of $32,750.00. The difference between the actual cost and the contract price was therefore the sum of $12,750.00. There were unpaid materialmen on this project whose claims total the sum of $43,828.49.

D. Columbus New Orleans Fried Chicken Remodeling: On January 20, 1984, Dr. Sethi paid the defendant a $5,000.00 advance for this particular project. The defendant retained the money and performed no services of any description whatsoever.

In addition to the above listed projects, the defendant failed to pay materialmen and suppliers on several other jobs. At a Pizza Inn project in Forest City, Arkansas, the plaintiff voluntarily paid materialmen the sum of $6,400.00. At a Western Sizzler project in Brookhaven, Mississippi, the plaintiff is now involved in litigation with the materialmen and suppliers who have filed claims totaling approximately $58,762.20. At a New Orleans Fried Chicken project located on Highway 80 West, Jackson, Mississippi, materialmen have filed claims totaling $25,442.85. Because of the provisions of § 85–7–181, Mississippi Code of 1972, which provides, inter alia, that the

project owner shall not be liable in any event for a greater amount than the amount contracted for with the contractor, the claims of the materialmen and suppliers regarding each of the aforementioned projects will not be dealt with in this Opinion. In the event that the plaintiff is compelled to pay these claims, they may be considered by this Court subsequently. However, the amounts that are properly before the Court at this time are those sums expended by the plaintiff to complete the projects over and above the contract price, as well as, the advance made on the Columbus, Mississippi, remodeling project. In summary, these amounts are as follows:

| | |
|---|---|
| Tupelo Pizza Inn | $36,000.00 |
| Ridgeland New Orleans Fried Chicken | 26,640.00 |
| Meridian New Orleans Fried Chicken | 12,750.00 |
| Columbus New Orleans Fried Chicken | 5,000.00 |
| Total | $80,390.00 |

The total amount of $80,390.00, would be considered the amount of damages sustained by the plaintiff as a result of the defendant's breach of the contracts related to the four projects, exclusive of any attorneys' fees and costs. Breach of contract damages, however, standing alone, are not necessarily non-dischargeable obligations in bankruptcy. Other factual circumstances must be considered to determine whether or not these damages fall within the parameters of 11 U.S.C. § 523(a)(2)(A), (4), or (6). These circumstances will be discussed immediately hereinbelow.

### V.

Without question, the defendant was a poor bookkeeper and business manager. He testified that he had lost between $78,000.00 to $79,000.00, on 1983 jobs, but was totally unaware of the magnitude of these losses prior to late January, 1984. Focusing on his activities shortly prior to filing the bankruptcy petition, the defendant acknowledged that he had received from the plaintiff the sum of $296,301.00, between October 20, 1983, and January 20, 1984.

Between December 2, 1983, and January 20, 1984, the defendant acknowledged receiving from the plaintiff the sum of $169,550.00. The defendant itemized his expenses during the period between October 20, 1983, and January 20, 1984, as follows:

| | |
|---|---|
| Total labor | $ 72,858.14 |
| Total materials | 201,620.75 |
| Miscellaneous business expenses | 9,948.54 |
| Subtotal | $284,427.43 |
| Personal expenses | 2,815.92 |
| Cash withheld | 3,850.00 |
| Checks payable to cash | 5,000.00 |
| Total | $296,093.35 |

Although most of the payments made by the defendant between late October, 1983, and January 20, 1984, appear to be business obligations, according to his bankruptcy schedules, he still was $164,983.65, in arrears on various projects, not just the three projects and the one remodeling project which he acknowledged that he failed to complete.

Although this bankruptcy case was filed on February 23, 1984, it was uncontradicted that the defendant closed down all construction operations and advised the plaintiff that he was planning to file bankruptcy on January 27, 1984. A former employee, Ralph Witty, testified that the defendant commented in January, 1984, that he had been consulting with an attorney for approximately three to four weeks about filing bankruptcy. This testimony was denied by the defendant who further testified that Witty's reputation for truthfulness was not good. The Court, however, is inclined to accept the testimony of Witty as being credible, especially in view of the fact that the defendant openly announced his bankruptcy intentions on the date that he closed down his business operation.

On January 20, 1984, only one week earlier, the defendant accepted a check from the plaintiff in the sum of $5,000.00, for the Columbus project, as well as, a check in the sum of $20,000.00, in payment ostensibly on the Ridgeland project. Where this money actually was expended is anyone's guess. As set forth more particularly

hereinabove, the defendant had received a total of $296,301.00, from the plaintiff between October 20, 1983, and January 20, 1984.

The defendant cashed a $5,000.00 check, drawn on his personal account at Merchants and Farmers Bank, on January 24, 1984. The defendant stated that this particular check was utilized for payroll, but the Court notes that many of the defendant's employees were his close relatives. The Court also notes that in the list of expenses prepared by the defendant, allegedly for the benefit of the plaintiff, are two payments to Bell Ready-Mix in the sum of $1,135.05, dated November 8, 1983, and in the sum of $193.20, dated January 4, 1984, which were utilized in the construction of the defendant's personal workshop, located on his property in Attala County, Mississippi.

The Court finds that the moneys paid by the plaintiff for work on the Tupelo, Ridgeland, and Meridian projects were being co-mingled and spent by the defendant with total disregard for project designations. The defendant, who was falling further and further behind, continued to receive these moneys, hoping to keep his business alive without regard for the inevitable day of reckoning. He had entered into numerous contracts for a specific contract price. Because he had grossly over run the earlier contracts, he continued the misapplication of the funds subsequently received to cover his earlier deficits. This pattern of conduct leads the Court to believe that the defendant did, in fact, misrepresent to the plaintiff the stages of completion of the three projects in Tupelo, Ridgeland, and Meridian. There is no question that a misrepresentation occurred on the Columbus project.

Because of the close business relationship and the element of trust that had developed between the plaintiff and defendant, the Court further finds that the plaintiff reasonably relied upon the representations made by the defendant when he extended the project payments.

## VI.

To prevent discharge for fraud under 11 U.S.C. § 523(a)(2)(A), the plaintiff must prove actual fraud and not merely fraud implied in law. The elements of actual fraud are:

1. A false representation by the debtor;
2. Known to be false at the time it was made;
3. Made with the intention and purpose of deceiving the creditor;
4. Which was reasonably relied on by the creditor; and
5. Which resulted in loss or damage to the creditor as the proximate result of the false representation.

See *In Re: Cokkinias,* 28 B.R. 304 (Bkrtcy.D.Mass.—1983); *In Re: Valley,* 21 B.R. 674 (Bkrtcy.D.Mass.—1982); *In Re: Johnson,* 18 B.R. 555 (Bkrtcy.N.D.Md.—1982); and *In Re: DeRosa,* 20 B.R. 307 (Bkrtcy.S.D.N.Y.—1982).

For a debt to be declared non-dischargeable, each of the aforesaid five elements must be proven by clear and convincing evidence. See *In Re: Vissers,* 21 B.R. 638 (Bkrtcy.E.D.Wis.—1982), and *In Re: Tomeo,* 1 B.R. 673 (Bkrtcy.E.D.Pa.—1979).

In the case before the Court, the plaintiff has charged that the defendant misrepresented the percentage of completion on three projects and that he accepted an advance payment on the remodeling project with the intention of providing no service. In addition, the plaintiff asserts that the defendant concealed his precarious financial condition while he continued to receive funds from the plaintiff, applying these funds to earlier projects rather than the on-going projects. In essence, the plaintiff contends that the misapplication of the funds constitutes a fraudulent misrepresentation, sufficient to render the underlying debts non-dischargeable. In this context, Courts have held that such misrepresentations may be implied by the defendant's conduct or silence and that no actual overt misrepresentation is necessary. See *In Re: Kramer,* 38 B.R. 80 (Bkrtcy.W.D.

La.—1984); *In Re: Wightman,* 36 B.R. 246 (Bkrtcy.D.N.Dak.—1984); and *In Re: Leger,* 34 B.R. 873 (Bkrtcy.D.Mass.—1983).

Several construction cases, factually analogous to the case before this Court, have held that debts arising as a result of false representations intentionally made by the defendant, causing damages to a creditor as a result of the creditor's reliance upon the representation are non-dischargeable. See *In Re: Miller,* 5 B.R. 424, 2 CBC 2d 849 (Bkrtcy.W.D.La.—1980); *In Re: Proia,* 33 B.R. 786 (Bkrtcy.D.R.I.—1983); and *In Re: Clayton,* 9 B.R. 5 (Bkrtcy.S.D. Fla.—1980).

Although there was no direct evidence presented as to the defendant's intention, the following quotation from *In Re: Leger,* supra, is pertinent, to-wit:

> "Since direct proof of intent (i.e., debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred. *In re Hosking,* 19 B.R. 891, 895 (Bkrtcy.W.D. Wisc.1982). As stated in *In re Schlickmann,* 6 B.R. 281, 282 (Bkrtcy.D.Mass. 1980): 'Direct proof of fraudulent intent is rarely available. Therefore intent to deceive may be inferred when the totality of the circumstances presents a picture of the deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the lender. The representation coupled with his conduct is sufficient to permit the court to infer the requisite intent.' The debtor cannot overcome such an inference with unsupported assertions of honest intent. *Matter of Rickey,* 8 B.R. 860, 863 (Bkrtcy.M. D.Fla.1981) and *In re Simpson,* 29 B.R. 202, 211–212 (Bkrtcy.N.D.Iowa 1983)."

*In Re: Leger,* 34 B.R. 873 at page 877.

From the factual circumstances, this Court is convinced that the plaintiff has proven by clear and convincing evidence each of the five elements necessary to support the conclusion that the obligations owed by the defendant to the plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). As set forth hereinabove,

the Court finds that the correct amount of the non-dischargeable debt at this time is the sum of $80,390.00, resulting from the amounts to complete the three named projects over and above the contract price, plus the advance made on the remodeling project. The plaintiff shall be awarded judgment against the defendant in the sum of $80,390.00, plus interest to accrue from the date of said judgment at the highest rate according to law.

Since this opinion is based on the conclusion that the defendant violated 11 U.S.C. § 523(a)(2)(A), the Court sees no necessity at this time to reach a determination as to whether violations of 11 U.S.C. § 523(a)(4) and § 523(a)(6) have occurred.

An Order will be entered consistent with this Opinion.