In re Felix William
MARANZINO, Debtor.

**FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,**

v.

**Felix William MARANZINO, Defendant.**

Bankruptcy No. 84–20480.
Adv. No. 84–0097.

United States Bankruptcy Court,
D. Kansas.

Nov. 25, 1986.

---

Felix William Maranzino, Overland Park, Kan., John T. Flannagan, Olathe, Kan., for debtor/defendant.

Laurence M. Jarvis, Kansas City, Kan., for plaintiff.

Henry W. Green, Leavenworth, Kan., Trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter came on for trial on May 1, 1986, on the plaintiff's, F.D.I.C., objection to the defendant's, Felix William Maranzino, discharge under section 727, and on the plaintiff's objection to discharge of several debts under section 523(a)(2)(A). The debtor/defendant appeared in person and through his attorney, John T. Flannagan. The plaintiff appeared by and through its attorneys, Laurence Jarvis and Dennis Mitchell. This Court dismissed the section 727 objection and took the section 523(a)(2)(A) objection under advisement.

## FINDINGS OF FACT

Based upon the record, the pleadings, the testimony, and the exhibits, the Court finds as follows:

1. The F.D.I.C. is the legal successor to the Indian Springs State Bank of Kansas City, Kansas. The bank closed pursuant to an order of the banking commissioner of the State of Kansas. The F.D.I.C. asserts the claims of the bank.

2. The defendant, Felix William Maranzino, operated as a wholesale car dealer under the name of "P & B Sales."

3. The defendant had two arrangements with Indian Springs State Bank in connection with the wholesale car dealings. The dispute in this case arose out of these arrangements.

4. First, the defendant received loans from the bank and used his automobiles as security. Upon the later sale of the automobiles, the defendant used the proceeds to pay off the loan. The bank held the titles of the automobiles until payment.

5. Second, the defendant sold automobiles to other dealers. The dealers would issue sight drafts to the defendant under the name of "P & B Sales" to be paid upon delivery of the title and the automobile. The defendant, however, could present the drafts to his bank, Indian Springs State Bank, for immediate credit to his checking account. Under the arrangement, the defendant would attach sealed envelopes to the drafts. The envelopes contained the fully-executed titles.

6. The following transactions occured pursuant to the first arrangement:

a. On June 2, 1982, the defendant obtained a $12,538.75 loan. The defendant gave the bank a 1980 Cadillac (I.D. Number 6S99AE673112) as security;

b. On June 25, 1982, the defendant obtained a $13,042.55 loan. The defendant gave a 1980 Cadillac (I.D. Number 6S99AE571881) as security;

c. On July 29, 1982, the defendant obtained a $13,541.85 loan. The defendant gave a 1980 Cadillac (I.D. Number 6S99AE686460) as security; and

d. On August 8, 1982, the defendant obtained a $23,500.12 loan. The defendant gave a 1980 Cadillac (I.D. Number 6L57NAE645627) as security.

7. The defendant disposed of the above vehicles without Indian Springs State Bank's permission. In addition, the defendant failed to apply any proceeds to the loans.

8. The following transactions occurred under the second arrangement:

a. On October 27, 1982, the defendant presented four sight drafts to Indian Springs State Bank. The drafts were from "Young's Used Cars" and drawn on their account at Tower State Bank. The four sight drafts for various amounts described certain vehicles as follows:

| YEAR | MAKE | VEHICLE ID. NUMBER | AMOUNT |
|---|---|---|---|
| 1979 | Chev. Corvette | 1287S9H145G621081 | $9,950.00 |
| 1981 | Buick Electra | 1GAW694XBH110361 | 8,900.00 |
| 1981 | Olds Toronado | 1G3AZ5740BB642340 | 9,500.00 |
| 1980 | Buick Riviera | 4257RAH455080 | 8,800.00 |
| | TOTAL | | $37,150.00 |

b. Indian Springs State Bank immediately credited the defendant's account.

c. The payor bank, Tower State Bank, dishonored the drafts because the defendant failed to include the fully executed titles in the sealed envelopes. In fact, the sealed envelopes contained simply a blank application for title.

d. On November 14, 1982, the defendant presented four other sight drafts to Indian Springs State Bank. The drafts were from "Belton Wholesalers", and drawn on their account of Charter Bank of Belton. The drafts for various amounts described certain vehicles as follows:

| YEAR | MAKE | VEHICLE ID. NUMBER | AMOUNT |
|---|---|---|---|
| 1980 | Olds Toronado | 1G3AZ5740BB342081 | $ 9,500.00 |
| 1980 | Buick Riviera | 4Z57RAH322361 | 8,800.00 |
| 1979 | Ford Conv. Van | E15BCDC281466 | 8,000.00 |
| 1981 | Lincoln Mark VI | 1MRBP95F78Y001621 | 12,750.00 |
| | TOTAL | | $39,050.00 |

e. Again, Indian Springs State Bank immediately credited the defendant's account.

f. The payor bank, Charter Bank of Belton, dishonored the drafts because the defendant failed to include the fully executed titles in the sealed envelopes. Again, the envelopes only contained blank applications for title.

9. A later examination of the vehicles' identification numbers submitted with the

sight drafts revealed that the vehicles never existed.

### ISSUES OF LAW

I. WHETHER THE DEFENDANT OBTAINED THE FOUR LOANS TOTALING $62,622.97 FROM INDIAN SPRINGS STATE BANK BY FALSE PRETENSES, FALSE REPRESENTATIONS, OR ACTUAL FRAUD UNDER SECTION 523(a)(2)(A) OF THE CODE.

II. WHETHER THE DEFENDANT OBTAINED THE IMMEDIATE CREDIT TO HIS BANK ACCOUNT FROM THE EIGHT SIGHT DRAFTS TOTALING $76,200 BY FALSE PRETENSES, FALSE REPRESENTATIONS, OR ACTUAL FRAUD UNDER SECTION 523(a)(2)(A) OF THE CODE.

### CONCLUSIONS OF LAW

#### I.

The F.D.I.C. contends that the defendant obtained the four loans from Indian Springs State Bank by false pretenses, false representations, or actual fraud. The F.D.I.C. contends that the defendant committed the fraud by disposing of the secured automobiles without permission and without applying the proceeds to the outstanding loans. As such, the F.D.I.C. argues that the four debts totaling $62,622.97 are excepted from discharge under section 523(a)(2)(A) of the Code.

■ This Court, however, finds that the F.D.I.C.'s objection does not fall within the terms of section 523(a)(2)(A). In order for a debt to be excepted from discharge under section 523(a)(2)(A), the loans must have been *"obtained by"* fraud in the inception. *In re Cokkinias,* 28 B.R. 304 8 C.B.C.2d 240, 243 (Bankr.D.Mass.1983), 3 Collier on Bankruptcy (15th ed.) ¶ 523.08, pgs. 46, 47. The fraud, if any, occurred in this instance some time *after* the initial loan when the defendant disposed of the automobiles. This flaw in the plaintiff's case is fatal. As such, the Court finds that

the above noted four debts are discharged under 11 U.S.C. § 523(a)(2)(A) as to the $62,622.97.

The Court further finds that the plaintiff, F.D.I.C., failed to sustain the burden of proof as to the aforementioned amounts in that the "evidence is insufficient to establish all of the elements of actual fraud necessary to except this portion of the plaintiff's debt from discharge pursuant to § 523(a)(2)(A)." *In re DeRosa,* 20 B.R. 307, 312 (Bankr.S.D.N.Y.1982).

#### II.

■ The F.D.I.C. contends that the defendant obtained the immediate credit to his bank account from the eight sight drafts by false pretenses, false representations, or actual fraud. As such, the plaintiff argues that the eight debts totaling $76,200 from the subsequent dishonor by the payor banks are excepted from discharge under section 523(a)(2)(A). This Court agrees.

Section 523(a)(2)(A) requires that something of value was obtained by false pretenses, false representations, or other actual fraudulent conduct. *In re Ridgway,* 24 B.R. 780 (Bankr.D.Kan.1982). The elements of § 523(a)(2)(A) are: (1) That the debtor knowingly committed actual fraud, false representations or false pretenses; (2) that the debtor intended to deceive; (3) that the creditor reasonably relied on the debtor's conduct; and (4) that the reliance proximately damaged the creditor. *Id.* at 784 (*citing In re Vickers,* 577 F.2d 683 (10th Cir.1978); *Carini v. Matera,* 592 F.2d 378 (7th Cir.1979); and *In re Houtman,* 568 F.2d 651 (9th Cir.1978)).

■ Under the first element, the fraud must be actual and of a kind involving moral turpitude or intentional wrong. Fraud implied or inferred is insufficient. *See In re Ridgway,* 24 B.R. 780 (Bankr.D. Kan.1982). The defendant's conduct in this case amounted to this type of conduct. At the time the defendant presented the sight drafts for immediate credit, he knew the payor banks would dishonor the drafts be-

cause he could never deliver the automobiles to the other car dealers. In fact, he knew that the automobiles did not exist. The defendant knowingly faked the identification numbers. Under these circumstances, the defendant's conduct clearly amounts to actual fraud.

Second, the defendant had the requisite intent to deceive. This intent can be inferred from the defendant's knowing conduct. *In re Brewood,* 15 B.R. 211 (Bankr. D.Kan.1981). One does not knowingly present sight drafts for eight nonexistent automobiles without intending to deceive. The Court infers the intent.

Third, the Indian Springs State Bank reasonably relied on the defendant's conduct. The reliance must be "reasonable" because protecting a debtor's fresh start is more important than protecting unreasonable creditors. *Carini v. Matera,* 592 F.2d 378 (7th Cir.1979). The arrangement between the bank and the debtor was an ongoing relationship. In the past, the sight drafts had been paid by payor banks. The defendant's prior conduct led the bank to reasonably believe the sight drafts would go smoothly through the collection process.

Finally, the plaintiff sustained damages as a proximate result of the debtor's fraudulent conduct. Clearly, the Indian Springs State Bank suffered a pecuniary loss of $76,200 upon the dishonoring by the payor banks.

The Court finds that F.D.I.C., by clear and convincing evidence, proved that: (1) the defendant acted fraudulently, (2) the defendant intended to deceive the bank, (3) the bank reasonably relied on the defendant's conduct, and (4) the conduct injured the bank. Accordingly, the $76,200 debt is nondischargeable.

### ORDER

Based on the foregoing Memorandum, which constitutes Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure, IT IS ORDERED That judgment be for the defendant and against the plaintiff with reference to the $62,622.27, and said amount *is* dischargeable within the meaning of § 523(a)(2)(A).

IT IS FURTHER, BY THE COURT, ORDERED That judgment be for the plaintiff, F.D.I.C., and against the defendant, Felix William Maranzino, with reference to the $76,200; and this amount owed to F.D.I.C. is therefore *not* dischargeable within the meaning of § 523(a)(2)(A).